**Mary VICK,**
**Plaintiff-Appellant—Cross-Appellee,**

**v.**

**TEXAS EMPLOYMENT COMMIS-**
**SION, Defendant-Appellee—**
**Cross-Appellant.**

No. 74–1525.

United States Court of Appeals,
Fifth Circuit.

June 12, 1975.

Rehearing and Rehearing En Banc
Denied Sept. 15, 1975.

Stuart M. Nelkin, Houston, Tex., for plaintiff-appellant.

William A. Carey, Gen. Counsel, Joseph T. Eddins, Associate Gen. Counsel, Beatrice Rosenberg, Charles L. Reischel, Susan J. Johnson, Attys., E. E. O. C., Washington, D. C. for amicus curiae.

John L. Hill, Atty. Gen., Austin, Tex., Michael Stork, Asst. Atty. Gen., for defendant-appellee.

Before RIVES, GODBOLD and GEE, Circuit Judges.

GEE, Circuit Judge:

Mary Vick, a mathematical analyst laid off by TRW Systems, Inc., applied to the Texas Employment Commission for job referrals and unemployment compensation. Despite her initial eligibility, the Texas Employment Commission (TEC) deemed Vick unavailable for work and thus ineligible to receive further unemployment compensation benefits during the last trimester of her pregnancy. This was in accordance with general and settled Commission policy and despite medical evidence submitted by Vick of her individual continuing ability to work. Ineligibility for benefits, under further general Commission policy, continued until six weeks after childbirth, at which time Vick could produce proof, inter alia, of her ability to return to work.[1] Vick alleges, as well, that TEC refused to refer her to jobs during her last trimester. Claiming to be a victim of sex discrimination, Vick filed suit in federal district court,[2] alleging unlawful employment practices under Title VII of the 1964 Civil Rights Act, 42 U.S.C. § 2000e et seq. and violation of Fourteenth Amendment rights, and seeking declaratory relief and damages. After consideration, the lower court[3] concluded and so declared that TEC had employed an impermissible sex stereotype in arriving at an across-the-board, three-month cutoff date, that Vick could have performed the requirements of her job up to a period six weeks prior to the scheduled birth of her child and would have again been able to work—subject to submission of proof in compliance with TEC guidelines

1. DETERMINATION OF CLAIMANT'S BENEFIT RIGHTS

You are considered not available for work because you are in the last three months of pregnancy. Therefore, you are not eligible to receive benefits under Section 4(d) of the Act for the period beginning May 18, 1970, forward. This ineligibility will remain in effect until six weeks after childbirth and shall not be removed then unless and until you produce evidence that you are physically able to return to work, that you have some-
one to care for the child, that the baby is not breast fed, and, if you are still residing in the same community where you last work, that you have made an attempt to return to work for your former employer and that work was not available to you.

After receiving this initial determination by the Insurance Department of the Texas Employment Commission, Vick exhausted her administrative remedies.

2. After receiving notice of right to sue.

3. Trial being before the court.

—30 days after giving birth. Thus, she was available for work as required under the Texas Unemployment Compensation statute. However, the court found Vick had failed to show TEC negligent or in malfeasance in referring her to jobs. Acting under 42 U.S.C. § 2000e–5(g), the court deemed the "appropriate affirmative action" to be award of back unemployment benefits, excluding the postnatal period since Vick had never complied with the TEC proof requirements. Attorneys' fees were awarded as well. Both parties appealed.

Insofar as Vick relies on Title VII, TEC is being sued as an employment agency.[4] The relevant provision reads:

> It shall be an unlawful employment practice for an employment agency to fail or refuse to refer for employment, or otherwise to discriminate against, any individual because of his race, color, religion, sex, or national origin, or to classify or refer for employment any individual on the basis of his race, color, religion, sex, or national origin.

42 U.S.C. § 2000e–2(b). We earlier noted that the meaning of the phrase "or otherwise to discriminate" is not elucidated by legislative history. Schattman v. Texas Employment Commission, 459 F.2d 32, 38 (5th Cir. 1972), cert. denied, 409 U.S. 1107, 93 S.Ct. 901, 34 L.Ed.2d 688 (1973). In Schattman, we concluded although for other purposes,[5] that "[t]he key words in the section deal with 'reference for employment' and 'individuals.'" Schattman v. Texas Employment Commission, supra at 38. Vick would have us conclude that denial of unemployment benefits is included in the phrase "or otherwise to discriminate."[6] We would do so only if such denial influenced or were included in TEC's referral activities, and we think it is not. First, there is no hint in the relevant statutory language that denial of benefits is covered. Indeed the provision was intended to cover private as well as government employment agencies. Further, the trial court found that Vick had failed to show that TEC had not referred her to job openings during the period in question.[7] That conclusion is not clearly erroneous, as will be discussed below. Even though the trial court found no failure to refer, it did find TEC had discriminated against Vick by denying her unemployment compensation benefits, indicating that TEC's referral activities are not dependent on its operation of the state unemployment compensation program. We can only conclude that it was not a classification or determination which had an impact on "reference for employment"; therefore, the trial court had no Title VII jurisdiction over this part of Vick's case.[8]

As for the claim properly before the court under Title VII, that claim must fail on the merits. Assum-

---

4. According to appellant in oral argument.

5. The issue in Schattman was whether the inclusion of TEC as an employment agency under Title VII destroyed the exclusion it might enjoy as a state agency insofar as its position as an employer of the plaintiff in that case was concerned. We concluded it did not. The 1972 amendments to Title VII expanded general coverage to state governments and their agencies as employers, so the exclusion at issue in Schattman no longer exists.

6. An issue different from whether denial of unemployment compensation could be shown a proximate cause of nonreferral and therefore an element of damages in a proper Title VII case.

7. "At material times herein, Plaintiff was duly registered with the Commission's placement office for referrals to suitable employment. The evidence, including the testimony of Plain-

tiff, does not show the Commission to have been negligent or in malfeasance in the attempting to secure other employment for Plaintiff." Memorandum and opinion of trial court at 3.

8. Although state (Vernon's Tex.Rev.Civ.Stat. Ann. art. 5221b–10) and federal (42 U.S.C. § 503) law recognize that the functions of referral and determination of benefit eligibility may be performed by the same state agency, they do not indicate that they both are considered referral activities within the meaning of Title VII. The consolidation of functions in one agency is a logical one since one requirement for benefit eligibility—apart from being deemed "available for work"—is that the individual be registered for work at "an employment office." Tex.Rev.Civ.Stat. Ann. art. 5221b–2(a). The converse is not true. One may be referred even though not receiving or applying for unemployment compensation.

ing, without deciding, that discrimination based on pregnancy would constitute sex discrimination under Title VII, we cannot say the trial court's conclusion that TEC did not fail to refer Vick is clearly erroneous. I. V. Ferguson, a Commission employee, testified that there was no general Commission policy against referral of pregnant women and that women were treated on a case-by-case basis. A second Commission employee, Raymond Porter, asserted without qualification that the fact a person is considered ineligible for unemployment compensation has no relationship to TEC's offer of job referral services. There was evidence of fairly extensive layoffs of mathematical analysts in the area at that time. It would be permissible to infer that few, if any, job opportunities existed. In fact, Vick herself testified that she had received no referrals *before* denial of the unemployment compensation benefits and that she had looked for a job without TEC aid between May 1 and August 1 with no results. The court could conclude this evidence offset any inference which could have been made from the fact of nonreferral. Finally, the TEC form denying benefits refers only to unemployment compensation and is signed by a member of the Insurance Department of the Texas Employment Commission. The use of the words "unavailable for work" in the notification form is due to the specific statutory provision governing benefit eligibility,[9] not referrals. Aside from the mere facts of nonreferral and TEC's policy on unemployment compensation benefits, Vick could only offer testimony that one TEC employee had told her on an early visit to the Commission office that he had some job openings "coming up," that on her later visits she was "ignored more or less" and that it was her "understanding" that she would not be referred to jobs. None of this testimony compels

us to conclude that the court's determination was clearly erroneous. As a final point, Vick contends that the court should have used the adverse inference rule to find TEC in violation of Title VII. Specifically, TEC records on Vick were destroyed before trial, apparently pursuant to Commission regulations governing disposal of inactive records. Vick's argument is unpersuasive. The adverse inference to be drawn from destruction of records is predicated on bad conduct of the defendant. "Moreover, the circumstances of the act must manifest bad faith. Mere negligence is not enough, for it does not sustain an inference of consciousness of a weak case." McCormick, Evidence § 273 at 660–61 (1972), 31A C.J.S. Evidence § 156(2) (1964). There was indication here that the records were destroyed under routine procedures without bad faith and well in advance of Vick's service of interrogatories. Certainly, there were sufficient grounds for the trial court to so conclude.

■ Vick's complaint also alleged Fourteenth Amendment violations. The trial court did find jurisdiction under 28 U.S.C. § 1343 with 42 U.S.C. § 1983 as a statutory basis.[10] The § 1983 suit was directed at an agency of the state. We do not think TEC a "person" under § 1983, Cheramie v. Tucker, 493 F.2d 586, 587–88 (5th Cir.), cert. denied, 419 U.S. 868, 95 S.Ct. 126, 42 L.Ed.2d 107 (1974); therefore, the trial court was without jurisdiction over this head of Vick's complaint. City of Kenosha v. Bruno, 412 U.S. 507, 93 S.Ct. 2222, 37 L.Ed.2d 109 (1973).

We conclude that Vick's claim for unemployment compensation fails for lack of jurisdiction under either § 1983 or Title VII and that her claim for damages for nonreferral fails on the merits. As a result, awarding attorneys' fees was im-

---

**9.** Tex.Rev.Civ.Stat.Ann. art. 5221b–2(d). See also Vick's testimony, Transcript at 112.

**10.** See United Farmworkers of Florida Housing Project, Inc. v. City of Del Ray Beach, Florida, 493 F.2d 799, 802 n. 1 (5th Cir. 1974); Note, 87 Harv.L.Rev. 252, 254 nn. 13 and 15 (1973).

The trial court also found "jurisdiction" under 28 U.S.C. §§ 2201 and 2202; however, these provisions do not create jurisdiction where there is none. 28 U.S.C. § 1331 was not alleged.

738

proper, and the award cannot stand. TEC's remaining jurisdictional points are without merit.

Affirmed in part, reversed in part.

RIVES, Circuit Judge (dissenting):

I agree with the district court's findings and conclusions, as stated in its judgment, that Mrs. Vick "was improperly denied *prenatal* benefits for an excessive period prior to the birth of her child" (emphasis added) and that she "did not in fact or timely comply with the valid requirements of specific proof of *postnatal* eligibility" (emphasis added).

However, I think that the district court erred in awarding Mrs. Vick for prenatal benefits only $272.25 plus interest. It seems clearly established that Mrs. Vick was able to continue work as a mathematical analyst up to a very short time before the birth of her child.

In my opinion, the district court also erred in awarding only $300.00 as fees for Mrs. Vick's attorneys. Considering the public purpose served by the statutory provision for attorney's fees, the good faith of the attorneys, the reasonableness of claiming and litigating the right to recover very substantial sums for prenatal and postnatal benefits, the time and skill expended by the attorneys, and especially the importance of the principle of law successfully established and implemented, I think that a much larger amount should have been allowed as fees for Mrs. Vick's attorneys.

Mrs. Vick's complaint was filed in 1970, long before the decision of City of Kenosha v. Bruno, 412 U.S. 507, 93 S.Ct. 2222, 37 L.Ed.2d 109 (1973). Assuming that the majority is correct in holding that TEC is not a "person" under 42 U.S.C. § 1983, and that therefore the district court was without jurisdiction of a substantial part of Mrs. Vick's complaint, I think that, to be "just under the circumstances," 28 U.S.C. § 2106, we should by remand afford Mrs. Vick an opportunity to amend by adding "persons" as parties defendant.

In my opinion, however, jurisdiction did not depend solely on 28 U.S.C. § 1983. Mrs. Vick's complaint alleged unlawful employment practices under Title VII of the 1964 Civil Rights Act, 42 U.S.C. § 2000e et seq. and a violation of her fourteenth amendment rights. Those averments furnish a basis of federal jurisdiction independent of section 1983.

Further, it seems to me that the majority opinion denies any real meaning to the words in 42 U.S.C. § 2000e–2(b) "or otherwise to discriminate." I think the statute does reach discrimination against Mrs. Vick in the denial of unemployment benefits for an excessive period prior to the birth of her child.

Upon each of the stated grounds, I respectfully dissent.