**UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

No. 97-30659

JOSEPH CAPAROTTA, JR.,

Plaintiff-Appellee - Cross-Appellant,

VERSUS

ENTERGY CORPORATION, ENTERGY SERVICES, INC., LOUISIANA POWER &
LIGHT COMPANY, and NEW ORLEANS PUBLIC SERVICE, INC.,

Defendants-Appellants - Cross-Appellees.

Appeals from the United States District Court
for the Eastern District of Louisiana

February 25, 1999

Before DeMOSS, PARKER, and DENNIS, Circuit Judges.

ROBERT M. PARKER, Circuit Judge:

Entergy Corporation, et al. (hereinafter "Entergy") appeals
from a jury verdict for the plaintiff in this age discrimination
case. Joseph Caparotta, Jr., cross-appeals, complaining that he
was not awarded enough in back pay damages and challenging the
jury's finding that Entergy's discrimination was not willful. We
vacate and remand for a new trial.

BACKGROUND

Joseph Caparotta, Jr. was an employee of Entergy Services,

1

Inc. and various other Entergy predecessors from 1968 to 1993. While at Entergy, Caparotta worked in several accountant positions until he eventually became a Senior Lead Accountant. It was while in this position in July 1993 that he was terminated as the result of a work force reduction at the age of forty-nine.

At the time of his discharge, Entergy took the position that Caparotta was laid off because he was the lowest rated employee in his group. Caparotta maintained that his age was the real reason for his termination and filed an age discrimination claim under the Age Discrimination in Employment Act, 29 U.S.C. §§ 621, *et seq.* (ADEA).

During discovery, in-house counsel gathered documents in a storage box to review with outside counsel retained to defend Entergy in two cases, one of which involved Caparotta. In addition to the pleadings and correspondence for both cases, the storage box contained: (1) files received from the EEOC in connection with two separate FOIA requests; (2) a copy of a portion of Caparotta's official personnel file; (3) a copy of the personnel file for the plaintiff in the other case; (4) documents produced by Caparotta; and (5) the **original** Supervisor's File on Caparotta.

Outside counsel sent the box back to in-house counsel by courier. The box arrived around 4:30 p.m. and in-house counsel placed the box under a ledge at her secretary's station because she was going to have the documents copied for outside counsel. The next day, in-house counsel discovered the box was missing and ultimately determined that the contents of the box had been

2

accidentally incinerated that morning. The original Supervisor's File on Caparotta was the one item which could not be replaced by Entergy.

The district court held a hearing to determine whether the fact of the inadvertent destruction of documents in the possession of counsel for Entergy would be admitted in evidence and whether Caparotta would be entitled to an adverse inference as a result of the destruction of the documents. The district court concluded that it would not give the jury an adverse inference instruction because Entergy had not acted in bad faith, but that it would allow the fact of the inadvertent destruction of documents to be presented to the jury.

The action was tried before a jury which returned a verdict in favor of Caparotta and awarded him $20,500 in back pay. However, the jury found that Entergy did not willfully violate the ADEA. The district court held an evidentiary hearing on the issues of attorney's fees and front pay. Ultimately, the district court awarded Caparotta (a) $20,500 in back pay; (b) $103,003 in front pay; (c) $52,162 in attorney's fees; and (d) $3,270.13 in costs. The district court denied Entergy's motion for judgment as a matter of law. Entergy timely appeals. Caparotta cross-appeals.

## ANALYSIS

Entergy appeals from the district court's decision to admit evidence of the inadvertent destruction of documents arguing that such evidence was not relevant under Federal Rule of Evidence 401

and was highly prejudicial under Federal Rule of Evidence 403. This court reviews evidentiary rulings for abuse of discretion and will reverse a district court's ruling only if it affects a substantial right of a party. *First Nat'l Bank of Louisville v. Lustig*, 96 F.3d 1554, 1574 (5th Cir. 1996).

Prior to trial, the district court conducted an evidentiary hearing regarding the destruction of documents. The district court concluded that Entergy did not act in bad faith and that Caparotta was not entitled to an adverse inference instruction. However, the district court found that the evidence was relevant because "it bears to some extent on credibility and reliability." R. Vol. 9:46. Although considering the Rule 403 question a closer call, the district court concluded that Rule 403 did not preclude admission of some evidence of the destruction of documents. *Id*.

Entergy correctly points out that under this court's holding in *Vick v. Texas Employment Commission*, 514 F.2d 734, 737 (5th Cir. 1975), an adverse inference drawn from the destruction of records is predicated on bad conduct by the defendant. Because the district court found no bad faith, Entergy argues that evidence of the inadvertent destruction of documents should not have been presented to the jury.

Entergy is correct to the extent that it argues the spoilation doctrine did not apply and that the jury could not be instructed that the destroyed evidence was unfavorable to Entergy. However, *Vick* does not apply to the issue of whether the district court could nonetheless admit the fact of the destruction of documents

4

for the jury to weigh with the other evidence in the case because such evidence was relevant.

To evaluate whether an abuse of discretion occurred, it is helpful to explicate how the evidence of the inadvertent destruction of documents was presented to the jury. First, over the objection by Entergy, Caparotta's counsel was allowed to discuss the destruction of documents during his opening statement:

> And at this point I have to tell you all about some other evidence that you will hear that bears directly upon Ms. Battiste. That is this. Ms. Masinter had some supervisor's files in which we don't know what was in them. But we believe and common sense dictates they had a great deal of information in them about this entire evaluation process going on from 1991 with Mr. Caparotta. And then in the normal course of discovery, they were to have produced these files by Entergy. But we are not going to be able to show you those files today. We will never be able to show them to you, you will never be able to consider them. The night before we were supposed to get those files, they disappeared. And apparently they no longer exist. Nobody really knows what happened to those files. You'll hear from Entergy's lawyer, in house lawyer, an employee of Ms. Masinter, she was the last person in charge of them, they disappeared from her custody and control out of her office. She doesn't know, she can't say exactly what happened to those files. If she has some ideas, perhaps she doesn't know. She believes they were incinerated at 5:00 o'clock in the morning on the day we were to have gotten them. There was a whole box of documents we were supposed to have produced to us, that documents, boxes of documents contained all sorts of things, his personnel file, his various records from the company and so forth and all of those other records had already been copied, they were copied, somewhere at Entergy, the only missing file, not a copy of in the Human Resource Department at resources, not a copy at the legal office, the files had just gone. Nobody made a copy of those originals, they are gone and gone forever.

R.Vol.10:82-83. At that point, the district court instructed counsel to get on with the facts of the case. R. Vol. 10:83.

Counsel for Entergy then addressed the issue in its opening

5

statement before the jury:

> A couple of quick things I'll tell you. The records that are missing, it's a smoke screen. Some records were inadvertently lost. It appears the cleaning people threw them out. And Mrs. Masinter will have to testify and tell you all about it. She will testify, one of the lawyers representing us in this case. Tell you there was nothing even relevant in the documents, we are able to reproduce most of the documents except a very few irrelevant documents.

R. Vol. 10:98.

During the plaintiff's case-in-chief, Ms. Masinter, one of Entergy's attorneys present at counsel's table was called to the stand to testify. During a bench conference immediately prior to her testimony, Entergy objected to Ms. Masinter being called as a witness and asked for a cautionary instruction that the jury should not infer anything for or against either party in the case as a result of her testimony. The district court concluded it would hear the testimony and then decide the appropriate instruction. Ms. Masinter relayed the circumstances surrounding the inadvertent destruction of documents, and her testimony comprised approximately eight (8) pages of the record. R. Vol. 11:316-324.

At the conclusion of Ms. Masinter's testimony, the district court gave the following instruction to the jury:

> Members of the jury, I have heard this evidence before. I have concluded as a matter of law there was no intended willfulness to destroy the information. I simply recognize that this is a document intensive case. The document was referred to and I felt it was relevant at least for you to know this situation. Don't assume that by my allowing this testimony in that I do or do not place any weight on this information. I simply wanted you to be exposed to the evidence because I think it was relevant.

R.Vol. 11:325.

6

Finally, during closing arguments, counsel for both sides referred to the missing documents. During Caparotta's closing, counsel stated:

> We said we would show you that there was an important collection of evidence that had disappeared and we no longer had it available to us. Mrs. Battiste supervisor file. (sic) And I believe you heard Mrs. Massinter (sic) testify that that disappeared the morning before, the night before she was trying to produce it to us. They never have been able to reproduce it or find it. They don't know what happened to it. We don't have that evidence here before us. We can't argue that evidence to you. And I don't know what was in that file. I wish I did. But the suggestion is that it contained some handwritten notes of Mrs. Battiste. You heard how important a figure she was in this case.

R.Vol. 12:418.

> During Entergy's closing argument, counsel remarked:

> The missing documents. I mean, we would love to have those documents. No evidence it was intentional. The court told you that. The real point is the supervisor file was available when the decision was made in 1993. Mr. King and Mr. Bunting both testified they didn't even see it. The managers making these decisions didn't even see it. That is the supervisor's file. It's not relevant. The fact it's not relevant, they didn't even look at it. (sic) You have everything that the decision-makers used to make their decision.

R.Vol. 12:441.

> Caparotta's counsel then added during closing argument:

> Nancy Cassagne and Benita Battiste, that is where the real knowledge of what the dirty work that went on happened, how it happened and where are these people? Where are the witnesses, where are the documents?

R.Vol. 12:445.

We are sympathetic to the dilemma faced by the district court of what to do when evidence is inadvertently destroyed. Because Caparotta had the burden of proof in this case, the absence of

7

evidence could have unfairly harmed him. We cannot say that it would have been an abuse of discretion for the district court to let the jury know of the fact that certain documents were missing. But in this case, the fact that documents were missing was revealed to the jury through the testimony of one of Entergy's counsel seated at the defendants' table. Certainly, the prejudicial impact of such testimony from Entergy's counsel was substantial. Additionally, it was confusing to the jury because it was unclear as to which issue the evidence was relevant. At points throughout the trial, it appeared that the parties were relitigating the spoilation issue which had been resolved by the district court at an earlier evidentiary hearing. To say the least, this was a highly extraordinary method of informing the jury that documents were inadvertently destroyed. It would have been more appropriate for the district court to have informed the jury that the documents had been inadvertently destroyed and that the district court found no bad faith on the part of Entergy.

Federal Rule of Evidence 403 provides that although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of, *inter alia*, "unfair prejudice" or "confusion of the issues". Caparotta argues that the evidence was relevant because the jury might wonder why certain evidence was never introduced and also to show that Entergy had poor adherence to its own document retention policies. The district court found the evidence relevant with respect to the credibility and reliability of Entergy. Assuming that some probative value did

exist as to the issues in this case, such value was minuscule. Contrastingly, the danger of unfair prejudice and confusion of the issues was substantial.

Although exclusion of relevant evidence pursuant to Rule 403 "is an extraordinary measure that should be used sparingly," *see* *Campbell v. Keystone Aerial Surveys, Inc.*, 138 F.3d 996, 1004 (5th Cir. 1998), we find that in this case it was an abuse of discretion to allow the evidence of destruction of documents to be admitted through the testimony of defense counsel. We further conclude that the substantial rights of Entergy were affected by the admission of the evidence in the aforementioned manner and tainted the judgment of the jury. Accordingly, we vacate the judgment and remand for a new trial.[1]

VACATED and REMANDED.


DENNIS, Circuit Judge, dissenting.

I respectfully dissent from the majority opinion's conclusion that the district court abused its discretion in (1) finding that the probative value of the relevant evidence of Entergy's destruction or nonproduction of its original supervisor's file on Caparotta was not substantially outweighed by the danger of unfair prejudice and (2) determining that the evidence therefore should not be excluded under Federal Rule of Evidence 403.

This court has held that Fed.R.Evid. 403 favors the admissibility of relevant evidence, and that relevant evidence may

---

[1]Entergy also challenged on appeal whether the evidence was otherwise sufficient to sustain the jury's verdict. Because we find that the evidence was otherwise sufficient to support the jury's verdict, we do not reverse and render, but instead vacate and remand for new trial.

be excluded because of its detrimental persuasive effect on an adverse party's case only if its probative value is <u>substantially</u> outweighed by the danger of <u>unfair</u> prejudice.  <u>United States v. Davis</u>, 639 F.2d 239, 244 (5th Cir. 1981).  "Relevant evidence is inherently prejudicial; but it is only unfair prejudice, substantially outweighing probative values, which permits exclusion of relevant matter under Rule 403."  <u>United States v. McRae</u>, 593 F.2d 700, 707 (5th Cir.), <u>cert. denied</u>, 444 U.S. 862, 100 S.Ct. 128, 62 L.Ed.2d 83 (1979).  "Virtually all evidence is prejudicial or it isn't material.  The prejudice must be 'unfair.'"  <u>Dollar v. Long Mfg. N.C., Inc.</u>, 561 F.2d 613, 618 (5th Cir. 1977), <u>cert. denied</u>, 435 U.S. 996, 98 S.Ct. 1648, 56 L.Ed.2d 85 (1978).  <u>See also</u>, 22 Charles Alan Wright & Kenneth A. Graham, Jr., <u>Federal Practice and Procedure</u> § 5221 (1978).  Consequently, Fed.R.Evid. 403 is an extraordinary remedy to be used sparingly.  <u>E.g.</u>, <u>United States v. Thevis</u>, 665 F.2d 616, 633 (5th Cir. Unit B), <u>cert. denied</u>, 456 U.S. 1008, 102 S.Ct. 2300, 73 L.Ed.2d 1303 (1982).

The destruction or nonproduction of Entergy's original supervisor's file on Caparotta was relevant and of probative value to the ultimate issue in this case, viz. whether Entergy laid Caparotta off unlawfully because of his age or lawfully because of a reduction in force and his performance ratings.  Evidence of the subjective state of mind of Entergy's supervisory personnel who rated Caparotta's performance and decided to lay him off was relevant and would have had great probative value on the issue of whether his termination  was based on unlawful age discrimination.  It is highly probable that the original supervisor's file on Caparotta contained relevant and competent documentary evidence on this issue.  Thus, the circumstantial evidence tending to show that Entergy, which had notice that the file was relevant to the ultimate issue in the pending litigation, proceeded to prevent its production, was admissible and probative of facts permitting the jury to infer that Entergy did so out of the well-founded fear that the contents would harm its case.  In other words, the evidence that Entergy was responsible for the destruction or nonproduction

10

of the file had a tendency to make the ultimate fact that was of consequence to the action, i.e., unlawful age discrimination, more probable than it would be without the evidence.[2]  See Fed.R.Evid. 401.

I respectfully disagree with the majority's characterization of the probative value of Entergy's destruction or nonproduction of the file as "minuscule." maj.op.9.  As the majority opinion indicates, there was substantial evidence on both sides, and the case was properly submitted to the jury on whether Entergy's alleged reduction in force layoff of Caparotta was a pretext for discrimination against him on the basis of his age.  Entergy supervisors testified that Caparotta was selected for layoff in connection with a reduction in force because of his relative poor performance rating and not because of his age.  However, Entergy documents used in the evaluation of Caparotta's performance included his age and birthdate, without explanation as to how that information was relevant.  The former head of Entergy's accounting department in which Caparotta worked as an accountant testified in his deposition that the ages of the employees laid off were discussed.  Caparotta received a performance evaluation of 4.58 on a scale of 1 to 5 before he was demoted and transferred to a different supervisor, who gave him a rating of 2.74 for the remaining four months in the year.  When Caparotta was evaluated for purposes of the reduction in force the 2.74 rating for the four month period was used.  Caparotta contends that his rating of 4.58 was higher than that of any of his fellow employees during 1991 and 1992.  Entergy considered the 1991 and 1992 ratings of at least one younger employee in evaluating her for purposes of the  reduction

---

[2]  I do not question the credibility or integrity of Entergy's in-house counsel who testified that the file was removed from her office without her knowledge or permission.  However, the evidence tends to show that the persons who removed and perhaps destroyed the file were either agents of Entergy or persons authorized to have access to and custody of things in Entergy's offices.  The evidence does not suggest removal or destruction by an act of God or the intervention of a stranger, such as a burglar or vandal.

11

in force. In the same reduction in force evaluation, one of Caparotta's supervisors advised him to lower the evaluations of several employees Caparotta supervised so that it would be easier to justify later discharges. As this court concluded in <u>Broomfield v. Texas General Indemnity Co.</u>, 201 F.2d 746,748-49 (5th Cir. 1953), "[i]n a case of circumstantial evidence, trifles may be given weight in connection with the other facts in evidence, and if we indulge every presumption against the spoliator," it could be inferred from the fact that an adjuster "deemed it necessary to change or suppress the [company] doctor's opinion as to the cause of this man's death, [that] the man was injured in the course of his employment." Similarly, in the present case, the unfavorable inference that the jury may have drawn from Entergy's nonproduction of the original supervisor's file on Caparotta, could have been given weight in connection with the other evidence to tip the jury's scales in favor of finding that Caparotta had been terminated because of his age and not because of his comparatively low rating in a single four month period out of his 25 years of employment.

The evidence that Entergy was responsible for the nonproduction of the original supervisor's file did not present "danger of unfair prejudice" to Entergy's case. As the court observed in a leading case on the prejudicial effect of spoliation evidence, "[t]o be sure, the evidence was damaging [to the defendant], but 'prejudice and detriment are not synonymous.'" <u>Thor v. Boska</u>, 113 Cal. Rptr. 296, 302 (1974) (holding that the probative value of a medical malpractice defendant's destruction of the clinical record on a patient in whom he failed to diagnose breast cancer outweighed any prejudicial effect), <u>noted in</u> Jamie S. Gorelick et al., <u>Destruction of Evidence</u> § 2.4 (1989), § 2.4B (1997 Cum. Supp.) ("Spoliation evidence may be very damaging, but that is because it should be, not because it is prejudicial." Gorelick, <u>supra</u>, § 2.4 (1989)).

I agree with the majority that, "[b]ecause Caparotta had the burden of proof in this case, the absence of evidence could have

12

unfairly harmed him. We cannot say that it would have been an abuse of discretion for the district court to let the jury know of the fact that certain documents were missing." maj.op.at 8. But I disagree that Entergy's case was "unfairly prejudiced" because this fact was revealed to the jury through the testimony of Entergy's counsel. Under the circumstances, Entergy had both a right and an obligation to explain to the jury why it had not produced its original supervisor's file on Caparotta containing relevent evidence on the ultimate issue in the case. In the absence of a witness who saw or participated in the actual taking or destruction of the file, the testimony of the in-house counsel that the file had been removed from her office by someone without her knowledge or permission was Entergy's best evidence toward explaining its failure to produce the file. The fact that Entergy could not completely relieve itself of responsibility by presenting competent evidence that the file had been taken or destroyed by a stranger to its organization through theft, burglary or vandalism was detrimental but not unfairly prejudicial to its case. Furthermore, although I think the trial judge should not have told the jury that he had "concluded as a matter of law there was no intended willfulness to destroy the information," he erred in favor of Entergy, not Caparotta, because his remarks could have caused the jury to not draw or give little or no weight to a permissible unfavorable inference from Entergy's nonproduction of the file.

Contrary to the majority opinion, I do not think that "[i]t would have been more appropriate for the district court to have informed the jury that the documents had been inadvertently destroyed and that the district court found no bad faith on the part of Entergy." The questions of whether Entergy intentionally caused the nonproduction or destruction of the original supervisor's file, whether a permissible inference should be drawn that the evidence in the file would have been unfavorable to Entergy's case, and, if so, the effect or weight of that inference were all questions of facts to be decided by the jury, the trier of the facts in this case.

13

The general principles governing the admissibility of evidence of the destruction or nonproduction of documents and the permissible inference that may be drawn therefrom are well established.  See Nation-Wide Check Corp., Inc. V. Forest Hills Distributors, Inc., 692 F.2d 214 (1st Cir. 1982); Gorelick, supra, § 2.4A (1997 Cum. Supp.).  A party's intentional nonproduction or destruction of a relevant document is evidence from which the jury may infer that its contents would have been unfavorable to that party, provided that the party had notice that the document was relevant to pending or foreseeable litigation at the time he destroyed or failed to produce them.  Nation-Wide Check Corp., 692 F.2d at 217-18 (citing 2 Wigmore on Evidence § 291 (Chadbourn rev. 1979)); see Welsh v. United States, 844 F.2d 1239, 1246 (6th Cir. 1988); Vick v. Texas Employment Comm'n, 514 F.2d 734, 737 (5th Cir. 1975); Broomfield v. Texas General Indemnity Co., 201 F.2d 746, 749 (5th Cir. 1953); Warner Barnes & Co. V. Kokosai Kisen Kabushiti Kaisha, 102 F.2d 450, 453 (2d Cir.), modified, 103 F.2d 430 (2d Cir. 1939).

Applying these principles, it is clear that there was sufficient evidence from which the jury reasonably could have found that Entergy's original supervisor's file on Caparotta was relevant documentary evidence, that Entergy had notice that the evidence was relevant to an important issue in this case, and that Entergy intentionally caused the destruction or nonproduction of that relevant evidence.  Accordingly, the evidence was admissible, and the jury should have been instructed that, if it found that (1) the original supervisor's file contained documentary evidence relevant to the existence of any fact that is of consequence to the determination of the action; (2) Entergy intentionally caused the destruction or the nonproduction of that evidence; and (3) Entergy had notice that the documentary evidence  was relevant to a foreseeable legal proceeding at the time it destroyed or failed to produce the documents, the jury could but was not required to infer from the evidence that the documentary evidence would have been unfavorable to Entergy.

14

I do not agree with Entergy's argument that, because the district court told the jury he had "concluded as a matter of law there was no intended willfulness to destroy the information," under this court's decision in Vick, the evidence of Entergy's destruction or nonproduction of the original supervisor's file should not have been presented to the jury.  There are several reasons that the argument is without merit: (1) In a jury trial involving the issue of whether an inference may be drawn by the jury from the loss or destruction of documents, the judge's function is limited initially to a preliminary determination of whether the evidence is such that reasonable minds may differ on the factual questions involved.  Whether the facts required to justify an inference exist and, if so, whether an inference should be drawn from them in a particular case, constitute questions of fact.  See Barker v. Bledsoe, 85 F.R.D. 545, 547 (W.D. Okla. 1979); Gorelick, supra, § 2.22 (1989), § 2.22A (1997 Cum. Supp.).  Therefore, if the factual issues are reasonably debatable, as in the present case, it is not the function of the judge to decide them; they must be presented to the jury.  See American Casualty Co. v. Schaffer, 420 S.E.2d 820, 822 (Ga. 1992); Rodriquez v. Webb, 680 A.2d 604, 607 (N.H. 1996); Trupiano v. Cully, 84 N.W.2d 747, 748 (Mich. 1957); Goerlick, supra, § 2.22A (1997 Cum. Supp.).  (2) As Justice, then Judge, Breyer pointed out in Nation-Wide Check Corp., 692 F.2d at 219, "the 'bad faith' label is more useful to summarize the conclusion that an adverse inference is permissible than it is actually to reach the conclusion."  In the destruction or nonproduction of evidence context, the term sums up the required findings that (i) the evidence in question was relevant to an important issue in the case; (ii) a party intentionally destroyed or failed to produce the evidence; (iii) and the party knew or had notice that the evidence would be relevant to pending or foreseeable legal proceedings.  Thus, the term "bad faith" in this context does not signify the existence of a fact or state of mind in addition to or independent of the basic elements required for the introduction of evidence of the loss or destruction of

15

documents.  Analagously, this Court in <u>Vick</u> used the reverse term "without bad faith" to label or summarize its conclusion that the spoilation inference did not apply because the Commission had destroyed its records routinely pursuant to its pre-existing regulations governing the disposal of inactive records well prior to the time that the Commission had notice that the records might be relevant to a future legal proceeding.  (3) Moreover, any different reading of <u>Vick</u> would require that it be interpreted as conflicting with or  overruling the prior precedent of this court in <u>Broomfield v. Texas General Indemnity</u>, 201 F.2d 746 (5th Cir. 1953).  In <u>Broomfield</u> we held that the action of the defendant worker's compensation insurer's adjuster in procuring alteration by the company doctor of an accident report by superimposition of a "no" answer over the original "yes" answer to the question, whether an employee's on-the-job heart strain was the sole cause of his death, amounted to a spoliation of evidence permitting an inference unfavorable to the insurer to be given weight in connection with other facts in evidence.  The <u>Broomfield</u> court did not require a finding or conclusion of "bad faith" before permitting an inference to be drawn from the intentional alteration or suppression of evidence.  To read <u>Vick</u> as adding anything other than a summarizing conclusory label to the requisites for the introduction of evidence loss or destruction of documents and for the drawing of an inference therefrom would take the many times forbidden step of allowing one panel of this court to overrule a previous panel's decision.

Accordingly, I believe that the trial court did not err in allowing the introduction of the evidence of Entergy's destruction or nonproduction of the original supervisor's file because the jury reasonably could have found that the defendant was responsible for an intentional suppression of the file, that the file constituted relevant evidence, and that the defendant knew or had notice that the file was relevant evidence prior to its destruction or nonproduction.  In my opinion, the trial court erred in telling the jury that he had "concluded as a matter of law there was no

16

intended willfulness to destroy the information." However, this error is not ground for vacating the verdict or the judgment because refusal to take such action does not appear to be inconsistent with substantial justice. Fed.R.Civ.P. 61. The error was potentially harmful to the plaintiff-appellee's case, not that of the defendant-appellant; therefore, it must be disregarded as not affecting the substantial rights of the parties. <u>Id.</u>