ROBERT M. PARKER, Circuit Judge:
Entergy Corporation, et al. (hereinafter “Enterg/’) appeals from a jury verdict for the plaintiff in this age discrimination case. Joseph Caparotta, Jr., cross-appeals, complaining that he was not awarded enough in back pay damages and challenging the jury’s finding that Entergy’s discrimination was not willful. We vacate and remand for a new trial.
BACKGROUND
Joseph Caparotta, Jr. was an employee of Entergy Services, Inc. and various other En-tergy predecessors from 1968 to 1993. While at Entergy, Caparotta worked in several accountant positions until he eventually became a Senior Lead Accountant. It was while in this position in July 1993 that he was terminated as the result of a work force reduction at the age of forty-nine.
At the time of his discharge, Entergy took the position that Caparotta was laid off because he was the lowest rated employee in his group. Caparotta maintained that his age was the real reason for his termination and filed an age discrimination claim under the Age Discrimination in Employment Act, 29 U.S.C. §§ 621, et seq. (ADEA).
During discovery, in-house counsel gathered documents in a storage box to review with outside counsel retained to defend En-tergy in two cases, one of which involved Caparotta. In addition to the pleadings and correspondence for both cases, the storage box contained: (1) files received from the EEOC in connection with two separate FOIA requests; (2) a copy of a portion of Caparot-ta’s official personnel file; (3) a copy of the personnel file for the plaintiff in the other case; (4) documents produced by Caparotta; and (5) the original Supervisor’s File on Ca-parotta.
Outside counsel sent the box back to in-house counsel by courier. The box arrived around 4:30 p.m. and in-house counsel placed the box under a ledge at her secretary’s station because she was going to have the documents copied for outside counsel. The next day, in-house counsel discovered the box was missing and ultimately determined that the contents of the box had been accidentally incinerated that morning. The original Supervisor’s File on Caparotta was the one item which could not be replaced by Entergy.
The district court held a hearing to determine whether the fact of the inadvertent destruction of documents in the possession of counsel for Entergy would be admitted in evidence and whether Caparotta would be entitled to an adverse inference as a result of the destruction of the documents. The district court concluded that it would not give the jury an adverse inference instruction because Entergy had not acted in bad faith, but that it would allow the fact of the inadvertent destruction of documents to be presented to the jury.
The action was tried before a jury which returned a verdict in favor of Caparotta and awarded him $20,500 in back pay. However, the jury found that Entergy did not willfully violate the ADEA. The district court held an evidentiary hearing on the issues of attorney’s fees and front pay. Ultimately, the district court awarded Caparotta (a) $20,500 in back pay; (b) $103,003 in front pay; (c) $52,162 in attorney’s fees; and (d) $3,270.13 in costs. The district court denied Entergy’s motion for judgment as a matter of law. Entergy timely appeals. Caparotta cross-appeals.
ANALYSIS
Entergy appeals from the district court’s decision to admit evidence of the inadvertent destruction of documents arguing that such evidence was not relevant under Federal Rule of Evidence 401 and was highly prejudicial under Federal Rule of Evidence 403. This court reviews evidentiary rulings for abuse of discretion and will reverse a *756 district court’s ruling only if it affects a substantial right of a party. First Nat’l Bank of Louisville v. Lustig, 96 F.3d 1564, 1574 (5th Cir.1996).
Prior to trial, the district court conducted an evidentiary hearing regarding the destruction of documents. The district court concluded that Entergy did not act in bad faith and that Caparotta was not entitled to an adverse inference instruction. However, the district court found that the evidence was relevant because “it bears to some extent on credibility and reliability.” R. Vol. 9:46. Although considering the Rule 403 question a closer call, the district court concluded that Rule 403 did not preclude admission of some evidence of the destruction of documents. Id.
Entergy correctly points out that under this court’s holding in Vick v. Texas Employment Commission, 514 F.2d 734, 737 (5th Cir.1975), an adverse inference drawn from the destruction of records is predicated on bad conduct by the defendant. Because the district court found no bad faith, Entergy argues that evidence of the inadvertent destruction of documents should not have been presented to the jury.
Entergy is correct to the extent that it argues the spoliation doctrine did not apply and that the jury could not be instructed that the destroyed evidence was unfavorable to Entergy. However, Vick does not apply to the issue of whether the district court could nonetheless admit the fact of the destruction of documents for the jury to weigh with the other evidence in the case because such evidence was relevant.
To evaluate whether an abuse of discretion occurred, it is helpful to explicate how the evidence of the inadvertent destruction of documents was presented to the jury. First, over the objection by Entergy, Caparotta’s counsel was allowed to discuss the destruction of documents during his opening statement:
And at this point I have to tell you all about some other evidence that you will hear that bears directly upon Ms. Battiste. That is this. Ms. Masinter had some supervisor’s files in which we don’t know what was in them. But we believe and common sense dictates they had a great deal of information in them about this entire evaluation process going on from 1991 with Mr. Caparotta. And then in the normal course of discovery, they were to have produced these files by Entergy. But we are not going to be able to show you those files today. We will never be able to show them to you, you will never be able to consider them. The night before we were supposed to get those files, they disappeared. And apparently they no longer exist. Nobody really knows what happened to those files. You’ll hear from Entergy’s lawyer, in house lawyer, an employee of Ms. Masinter, she was the last person in charge of them, they disappeared from her custody and control out of her office. She doesn’t know, she can’t say exactly what happened to those files. If she has some ideas, perhaps she doesn’t know. She believes they were incinerated at 5:00 o’clock in the morning on the day we were to have gotten them. There was a whole box of documents we were supposed to have produced to us, that documents, boxes of documents contained all sorts of things, his personnel file, his various records from the company and so forth and all of those other records had already been copied, they were copied, somewhere at Entergy, the only missing file, not a copy of in the Human Resource Department at resources, not a copy at the legal office, the files had just gone. Nobody made a copy of those originals, they are gone and gone forever.
R.Vol.lO:82-83. At that point, the district court instructed counsel to get on with the facts of the ease. R. Vol. 10:83.
Counsel for Entergy then addressed the issue in its opening statement before the jury:
A couple of quick things I’ll tell you. The records that are missing, it’s a smoke screen. Some records were inadvertently lost. It appears the cleaning people threw them out. And Mrs. Masinter will have to testify and tell you all about it. She will testify, one of the lawyers representing us in .this case. Tell you there was nothing *757 even relevant in the documents, we are able to reproduce most of the documents except a very few irrelevant documents.
R. Vol. 10:98.
Diu'ing the plaintiffs case-in-chief, Ms. Masinter, one of Entergy’s attorneys present at counsel’s table was called to the stand to testify. During a bench conference immediately prior to her testimony, Entergy objected to Ms. Masinter being called as a witness and asked for a cautionary instruction that the jury should not infer anything for or against either party in the case as a result of her testimony. The district court concluded it would hear the testimony and then decide the appropriate instruction. Ms. Masinter relayed the circumstances surrounding the inadvertent destruction of documents, and her testimony comprised approximately eight (8) pages of the record. R. Vol. 11:316-324.
At the conclusion of Ms. Masinter’s testimony, the district court gave the following instruction to the jury:
Members of the jury, I have heard this evidence before. I have concluded as a matter of law there was no intended willfulness to destroy the information. I simply recognize that this is a document intensive case. The document was referred to and I felt it was relevant at least for you to know this situation. Don’t assume that by my allowing this testimony in that I do or do not place any weight on this information. I simply wanted you to be exposed to the evidence because I think it was relevant.
R.Vol. 11:325.
Finally, during closing arguments, counsel for both sides referred to the missing documents. During Caparotta’s closing, counsel stated:
We said we would show you that there was an important collection of evidence that had disappeared and we no longer had it available to us. Mrs. Battiste supervisor file, (sic) And I believe you heard Mrs. Massinter (sic) testify that that disappeared the morning before, the night before she was trying to produce it to us. They never have been able to reproduce it or find it. They don’t know what happened to it. We don’t have that evidence here before us. We can’t argue that evidence to you. And I don’t know what was in that file. I wish I did. But the suggestion is that it contained some handwritten notes of Mrs. Battiste. You heard how important a figure she was in this case.
R.Vol. 12:418.
During Entergy’s closing argument, counsel remarked:
The missing documents. I mean, we would love to have those documents. No evidence it was intentional. The court told you that. The real point is the supervisor file was available when the decision was made in 1993. Mr. King and Mr. Bunting both testified they didn’t even see it. The managers making these decisions didn’t even see it. That is the supervisor’s file. It’s not relevant. The fact it’s not relevant, they didn’t even look at it. (sic) You have everything that the decision-makers used to make their decision.
R.Vol. 12:441.
Caparotta’s counsel then added during closing argument:
Nancy Cassagne and Benita Battiste, that is where the real knowledge of what the dirty work that went on happened, how it happened and where are these people? Where are the witnesses, where are the documents?
R.Vol. 12:445.
We are sympathetic to the dilemma faced by the district court of what to do when evidence is inadvertently destroyed. Because Caparotta had the burden of proof in this case, the absence of evidence could have unfairly harmed him. We cannot say that it would have been an abuse of discretion for the district court to let the jury know of the fact that certain documents were missing. But in this case, the fact that documents were missing was revealed to the jury through the testimony of one of Entergy’s counsel seated at the defendants’ table. Certainly, the prejudicial impact of such testimony from Entergy’s counsel was substantial. Additionally, it was confusing to the jury because it was unclear as to which issue the evidence was relevant. At points throughout *758 the trial, it appeared that the parties were relitigating the spoliation issue which had been resolved by the district court at an earlier evidentiary hearing. To say the least, this was a highly extraordinary method of informing the jury that documents were inadvertently destroyed. It would have been more appropriate for the district court to have informed the jury that the documents had been inadvertently destroyed and that the district court found no bad faith on the part of Entergy.
Federal Rule of Evidence 403 provides that although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of, inter alia, “unfair prejudice” or “confusion of the issues”. Caparotta argues that the evidence was relevant because the jury might wonder why certain evidence was never introduced and also to show that Entergy had poor adherence to its own document retention policies. The district court found the evidence relevant with respect to the credibility and reliability of Entergy. Assuming that some probative value did exist as to the issues in this case, such value was minuscule. Contrastingly, the danger of unfair prejudice and confusion of the issues was substantial.
Although exclusion of relevant evidence pursuant to Rule 403 “is an extraordinary measure that should be used sparingly,” see Campbell v. Keystone Aerial Surveys, Inc., 138 F.3d 996, 1004 (5th Cir.1998), we find that in this case it was an abuse of discretion to allow the evidence of destruction of documents to be admitted through the testimony of defense counsel. We further conclude that the substantial rights of Entergy were affected by the admission of the evidence in the aforementioned manner and tainted the judgment of the jury. Accordingly, we vacate the judgment and remand for a new trial.[1]
VACATED and REMANDED.

. Entergy also challenged on appeal whether the evidence was otherwise sufficient to sustain the jury’s verdict. Because we find that the evidence was otherwise sufficient to support the jury’s verdict, we do not reverse and render, but instead vacate and remand for new trial.