DENNIS, Circuit Judge,
dissenting:
I respectfully dissent from the majority opinion’s conclusion that the district court abused its discretion in (1) finding that the probative value of the relevant evidence of Entergy’s destruction or nonproduction of its original supervisor’s file on Caparotta was not substantially outweighed by the danger of unfair prejudice and (2) determining that the evidence therefore should not be excluded under Federal Rule of Evidence 403.
This court has held that Fed.R.Evid. 403 favors the admissibility of relevant evidence, and that relevant evidence may be excluded because of its detrimental persuasive effect on an adverse party’s case only if its probative value is substantially outweighed by the danger of unfair prejudice. United States v. Davis, 639 F.2d 239, 244 (5th Cir.1981). “Relevant evidence is inherently prejudicial; but it is only unfair prejudice, substantially outweighing probative values, which permits exclusion of relevant matter under Rule 403.” United States v. McRae, 593 F.2d 700, 707 (5th Cir.), cert. denied, 444 U.S. 862, 100 S.Ct. 128, 62 L.Ed.2d 83 (1979). “Virtually all evidence is prejudicial or it isn’t material. The prejudice must be ‘unfair.’ ” Dollar v. Long Mfg. N.C., Inc., 561 F.2d 613, 618 (5th Cir.1977), cert. denied, 435 U.S. 996, 98 S.Ct. 1648, 56 L.Ed.2d 85 (1978). See also, 22 Charles Alan Wright & Kenneth A. Graham, Jr., Federal Practice and Procedure § 5221 (1978). Consequently, Fed.R.Evid. 403 is an extraordinary remedy to be used sparingly. E.g., United States v. Thevis, 665 F.2d 616, 633 (5th Cir. Unit B), cert. denied, 456 U.S. 1008, 102 S.Ct. 2300, 73 L.Ed.2d 1303 (1982).
The destruction or nonproduction of En-tergy’s original supervisor’s file on Caparotta was relevant and of probative value to the ultimate issue in this case, viz. whether En-tergy laid Caparotta off unlawfully because of his age or lawfully because of a reduction in force and his performance ratings. Evidence of the subjective state of mind of En-tergy’s supervisory personnel who rated Ca-parotta’s performance and decided to lay him off was relevant and would have had great probative value on the issue of whether his termination was based on unlawful age discrimination. It is highly probable that the *759 original supervisor’s file on Caparotta contained relevant and competent documentary evidence on this issue. Thus, the circumstantial evidence tending to show that Enter-gy, which had notice that the file was relevant to the ultimate issue in the pending litigation, proceeded to prevent its production, was admissible and probative of facts permitting the jury to infer that Entergy did so out of the well-founded fear that the contents would harm its case. In other words, the evidence that Entergy was responsible for the destruction or nonproduction of the file had a tendency to make the ultimate fact that was of consequence to the action, i.e., unlawful age discrimination, more probable than it would be without the evidence.[1] See Fed.R.Evid. 401.
I respectfully disagree with the majority’s characterization of the probative value of En-tergy’s destruction or nonproduction of the file as “minuscule.” maj.op. at 758. As the majority opinion indicates, there was substantial evidence on both sides, and the case was properly submitted to the jury on whether Entergy’s alleged reduction in force layoff of Caparotta was a pretext for discrimination against him on the basis of his age. Entergy supervisors testified that Caparotta was selected for layoff in connection with a reduction in force because of his relative poor performance rating and not because of his age. However, Entergy documents used in the evaluation of Caparotta’s performance included his age and birthdate, without explanation as to how that information was relevant. The former head of Entergy’s accounting department in which Caparotta worked as an accountant testified in his deposition that the ages of the employees laid off were discussed. Caparotta received a performance evaluation of 4.58 on a scale of 1 to 5 before he was demoted and transferred to a different supervisor, who gave him a rating of 2.74 for the remaining four months in the year. When Caparotta was evaluated for purposes of the reduction in force the 2.74 rating for the four month period was used. Caparotta contends that his rating of 4.58 was higher than that of any of his fellow employees during 1991 and 1992. Entergy considered the 1991 and 1992 ratings of at least one younger employee in evaluating her for purposes of the reduction in force. In the same reduction in force evaluation, one of Caparotta’s supervisors advised him to lower the evaluations of several employees Capar-otta supervised so that it would be easier to justify later discharges. As this court concluded in Broomfield v. Texas General Indemnity Co., 201 F.2d 746, 748-49 (5th Cir.1953), “[i]n a case of circumstantial evidence, trifles may be given weight in connection with the other facts in evidence, and if we indulge every presumption against the spoliator,” it could be inferred from the fact that an adjuster “deemed it necessary to change or suppress the [company] doctor’s opinion as to the cause of this man’s death, [that] the man was injured in the course of his employment.” Similarly, in the present case, the unfavorable inference that the jury may have drawn from Entergy’s nonproduction of the original supervisor’s file on Caparotta, could have been given weight in connection with the other evidence to tip the jury’s scales in favor of finding that Caparotta had been terminated because of his age and not because of his comparatively low rating in a single four month period out of his 25 years of employment.
The evidence that Entergy was responsible for the nonproduction of the original supervisor’s file did not present “danger of unfair prejudice” to Entergy’s case. As the court observed in a leading case on the prejudicial effect of spoliation evidence, “[t]o be sure, the evidence was damaging [to the defendant], but ‘prejudice and detriment are not synonymous.’ ” Thor v. Boska, 38 Cal.App.3d 558, 113 Cal.Rptr. 296, 302 (1974) (holding that the probative value of a medical malpractice defendant’s destruction of the clinical record on a patient in whom he failed *760 to diagnose breast cancer outweighed any prejudicial effect), noted in Jamie S. Gorelick et al., Destruction of Evidence § 2.4 (1989), § 2.4B (1997 Cum.Supp.) (“Spoliation evidence may be very damaging, but that is because it should be, not because it is prejudicial.” Gorelick, supra, § 2.4 (1989)).
I agree with the majority that, “[bjecause Caparotta had the burden of proof in this case, the absence of evidence could have unfairly harmed him. We cannot say that it would have been an abuse of discretion for the district court to let the jury know of the fact that certain documents were missing.” maj.op. at 757. But I disagree that Entergy’s case was “unfairly prejudiced” because this fact was revealed to the jury through the testimony of Entergy’s counsel. Under the circumstances, Entergy had both a right and an obligation to explain to the jury why it had not produced its original supervisor’s file on Caparotta containing relevant evidence on the ultimate issue in the case. In the absence of a witness who saw or participated in the actual taking or destruction of the file, the testimony of the in-house counsel that the file had been removed from her office by someone without her knowledge or permission was Entergy’s best evidence toward explaining its failure to produce the file. The fact that Entergy could not completely relieve itself of responsibility by presenting competent evidence that the file had been taken or destroyed by a stranger to its organization through theft, burglary or vandalism was detrimental but not unfairly prejudicial to its case. Furthermore, although I think the trial judge should not have told the jury that he had “concluded as a matter of law there was no intended willfulness to destroy the information,” he erred in favor of Enter-gy, not Caparotta, because his remarks could have caused the jury to not draw or give little or no weight to a permissible unfavorable inference from Entergy’s nonproduction of the file.
Contrary to the majority opinion, I do not think that “[i]t would have been more appropriate for the district court to have informed the jury that the documents had been inadvertently destroyed and that the district court found no bad faith on the part of Entergy.” The questions of whether Enter-gy intentionally caused the nonproduction or destruction of the original supervisor’s file, whether a permissible inference should be drawn that the evidence in the file would have been unfavorable to Entergy’s case, and, if so, the effect or weight of that inference were all questions of facts to be decided by the jury, the trier of the facts in this case.
The general principles governing the admissibility of evidence of the destruction or nonproduction of documents and the permissible inference that may be drawn therefrom are well established. See Nation-Wide Check Corp., Inc. v. Forest Hills Distributors, Inc., 692 F.2d 214 (1st Cir.1982); Gorelick, supra, § 2.4A (1997 Cum.Supp.). A party’s intentional nonproduction or destruction of a relevant document is evidence from which the jury may infer that its contents would have been unfavorable to that party, provided that the party had notice that the document was relevant to pending or foreseeable litigation at the time he destroyed or failed to produce them. Nation-Wide Check Corp., 692 F.2d at 217-18 (citing 2 Wigmore on Evidence § 291 (Chadbourn rev.1979)); see Welsh v. United States, 844 F.2d 1239, 1246 (6th Cir.1988); Vick v. Texas Employment Comm’n, 514 F.2d 734, 737 (5th Cir.1975); Broomfield v. Texas General Indemnity Co., 201 F.2d 746, 749 (5th Cir.1953); Warner Barnes & Co. v. Kokosai Risen Kabushiki Kaisha, 102 F.2d 450, 453 (2d Cir.), modified, 103 F.2d 430 (2d Cir.1939).
Applying these principles, it is clear that there was sufficient evidence from which the jury reasonably could have found that Enter-gy’s original supervisor’s file on Caparotta was relevant documentary evidence, that En-tergy had notice that the evidence was relevant to an important issue in this case, and that Entergy intentionally caused the destruction or nonproduetion of that relevant evidence. Accordingly, the evidence was admissible, and the jury should have been instructed that, if it found that (1) the original supervisor’s file contained documentary evidence relevant to the existence of any fact that is of consequence to the determination of the action; (2) Entergy intentionally caused the destruction or the nonproduction *761 of that evidence; and (3) Entergy had notice that the documentary evidence was relevant to a foreseeable legal proceeding at the time it destroyed or failed to produce the documents, the jury could but was not required to infer from the evidence that the documentary evidence would have been unfavorable to En-tergy.
I do not agree with Entergy’s argument that, because the district court told the jury he had “concluded as a matter of law there was no intended willfulness to destroy the information,” under this court’s decision in Vick, the evidence of Entergy’s destruction or nonproduction of the original supervisor’s file should not have been presented to the jury. There are several reasons that the argument is without merit: (1) In a jury trial involving the issue of whether an inference may be drawn by the jury from the loss or destruction of documents, the judge’s function is limited initially to a preliminary determination of whether the evidence is such that reasonable minds may differ on the factual questions involved. Whether the facts required to justify an inference exist and, if so, whether an inference should be drawn from them in a particular case, constitute questions of fact. See Barker v. Bledsoe, 85 F.R.D. 545, 547 (W.D.Okla.1979); Gorelick, supra, § 2.22 (1989), § 2.22A (1997 Cum. Supp.). Therefore, if the factual issues are reasonably debatable, as in the present case, it is not the function of the judge to decide them; they must be presented to the jury. See American Casualty Co. v. Schafer, 204 Ga.App. 906, 420 S.E.2d 820, 822 (1992); Rodriguez v. Webb, 141 N.H. 177, 680 A.2d 604, 607 (1996); Trupiano v. Cully, 349 Mich. 568, 84 N.W.2d 747, 748 (1957); Goerlick, supra, § 2.22A (1997 Cum.Supp.). (2) As Justice, then Judge, Breyer pointed out in Nation-Wide Check Corp., 692 F.2d at 219, “the ‘bad faith’ label is more useful to summarize the conclusion that an adverse inference is permissible than it is actually to reach the conclusion.” In the destruction or non-production of evidence context, the term sums up the required findings that (i) the evidence in question was relevant to an important issue in the case; (ii) a party intentionally destroyed or failed to produce the evidence; (iii) and the party knew or had notice that the evidence would be relevant to pending or foreseeable legal proceedings. Thus, the term “bad faith” in this context does not signify the existence of a fact or state of mind in addition to or independent of the basic elements required for the introduction of evidence of the loss or destruction of documents. Analagously, this Court in Vick used the reverse term “without bad faith” to label or summarize its conclusion that the spoilation inference did not apply because the Commission had destroyed its records routinely pursuant to its pre-existing regulations governing the disposal of inactive records well prior to the time that the Commission had notice that the records might be relevant to a future legal proceeding. (3) Moreover, any different reading of Vick would require that it be interpreted as conflicting with or overruling the prior precedent of this court in Broomfield v. Texas General Indemnity, 201 F.2d 746 (5th Cir.1953). In Broomfield we held that the action of the defendant worker’s compensation insurer’s adjuster in procuring alteration by the company doctor of an accident report by superimposition of a “no” answer over the original “yes” answer to the question, whether an employee’s on-the-job heart strain was the sole cause of his death, amounted to a spoliation of evidence permitting an inference unfavorable to the insurer to be given weight in connection with other facts in evidence. The Broomfield court did not require a finding or conclusion of “bad faith” before permitting an .inference to be drawn from the intentional alteration or suppression of evidence. To read Vick as adding anything other than a summarizing conclusory label to the requisites for the introduction of evidence loss or destruction of documents and for the drawing of an inference therefrom would take the many times forbidden step of allowing one panel of this court to overrule a previous panel’s decision.
Accordingly, I believe that the trial court did not err in allowing the introduction of the evidence of Entergy’s destruction or nonpro-duction of the original supervisor’s file because the jury reasonably could have found that the defendant was responsible for an intentional suppression of the file, that the file constituted relevant evidence, and that *762 the defendant knew or had notice that the file was relevant evidence prior to its destruction or nonproduction. In my opinion, the trial court erred in telling the jury that he had “concluded as a matter of law there was no intended willfulness to destroy the information.” However, this error is not ground for vacating the verdict or the judgment because refusal to take such action does not appear to be inconsistent with substantial justice. Fed.R.Civ.P. 61. The error was potentially harmful to the plaintiff-appel-lee’s case, not that of the defendant-appellant; therefore, it must be disregarded as not affecting the substantial rights of the parties. Id.

. I do not question the credibility or integrity of Entergy’s in-house counsel who testified that the file was removed from her office without her knowledge or permission. However, the evidence tends to show that the persons who removed and perhaps destroyed the file were either agents of Entergy or persons authorized to have access to and custody of things in Entergy's offices. The evidence does not suggest removal or destruction by an act of God or the intervention of a stranger, such as a burglar or vandal.