John T. WILLIAMS, et al., Plaintiffs,

v.

CSX TRANSPORTATION,
INC., Defendant.

Civil A. No. 1:95–cv–195RR.

United States District Court,
S.D. Mississippi,
Southern Division.

Feb. 21, 1996.

Donald G. Beebe of the firm of Crosby, Saad, Beebe & Crump, P.A., Mobile, AL, for Plaintiffs.

Raymond L. Brown, Patrick R. Buchanan and W. Mark Edwards of the firm of Brown & Watt, P.A., Pascagoula, MS, for Defendant.

## MEMORANDUM ORDER

DAN M. RUSSELL, Jr., District Judge.

This matter is before the Court on a motion by the defendant, CSX Transportation, Inc. ("CSX"), for Partial Summary Judgment, pursuant to Rule 56 of the Federal Rules of Civil Procedure.

### FACTS

On September 13, 1994, at approximately 9:33 p.m., a freight train operated by CSX collided with an automobile which was occupied by the Plaintiffs' decedent.

The collision occurred at the DeLauney Street crossing in Biloxi, Mississippi, and at the time of the collision, the train was traveling in an easterly direction. The automobile was heading south.

According to the evidence before the Court, at the time of the collision the train was traveling at a speed of approximately 42 mph.

There is also evidence that the crossing warning device located on the north side of the track at the subject crossing was a passive device known as a "Crossbuck," which device contained a reflectorized surface.

### DISCUSSION

The movant prays for summary disposition as to those elements of the Complaint of the plaintiffs which assert that CSX failed to install a more appropriate type of crossing warning device or devices at the subject crossing and as to those elements of the Complaint which assert a claim that CSX violated its duty as to the speed of the subject train on the day and time in question.

Summary judgment is appropriate only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. In *St. Amant v. Benoit*, 806 F.2d 1294, 1296–97 (5th Cir. 1987), the Fifth Circuit addressed the law as regards summary judgment and stated that "[t]he mere existence of a factual dispute does not by itself preclude the granting of summary judgment. '[T]he requirement is that there be no genuine issue of material fact.' *Anderson v. Liberty Lobby*, 477 U.S. [242], [248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202] (1986) (emphasis in original)." (citations omitted).

The Fifth Circuit has addressed when an issue is genuine.

[A]n issue is genuine if the evidence supporting its resolution in favor of the party opposing summary judgment, together with any inferences in such party's favor that the evidence allows, would be sufficient to support a verdict in favor of that party. If, on the other hand, the evidence offered by both the moving and opposing parties would support only one conclusion and, even if all the evidence to the contrary is fully credited, a trial court would be obliged to direct a verdict in favor of the moving party, the issue is not genuine.

*Professional Managers, Inc. v. Fawer, Brian, Hardy & Zatzkis*, 799 F.2d 218, 222 (5th Cir.1986) (footnotes omitted).

The United States Supreme Court further stated in Liberty Lobby that as to materiality, "[o]nly disputes over the facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson v. Liberty Lobby*, 477 U.S. at 248, 106 S.Ct. at 2510.

The Supreme Court has noted that the standard for summary judgment mirrors the standard for a directed verdict, the main difference between the two being when they are used, as the inquiry under each is the same. See *Celotex Corporation v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). "Barebones allegations are insufficient to withstand summary judgment because the opposing party 'must counter factual allegations by the moving party with specific, factual disputes; mere general allegations are not a sufficient response.'" *Howard v. Greenwood*, 783 F.2d 1311, 1315 (5th Cir.1986) (citing *Nicholas Acoustics & Specialty Co. v. H & M Construction Co., Inc.*, 695 F.2d 839, 845 (5th Cir.1983)).

### A. Crossing Warning Devices

In Article 6 of the subject complaint, the plaintiffs assert several counts of "careless and negligent" behavior by the defendant.

In summary, as to the warning devices which were present at the time of the subject accident, the plaintiffs allege:

1. At paragraph (b): Failure to "install and maintain reasonably adequate crossing protective devices" so as to warn motorists;

2. At paragraph (g): Failure to "install automatic train-activated flasher signals or automatic train-activated flasher signals combined with roadway gates"; and

3. At paragraph (h): Failure to "install and maintain crossing protective devices ... of a character and quality consistent with the state of the art."

As previously stated, the defendant seeks summary judgment as to each and every allegation that it had a duty to place or design additional warning devices for placement at the subject crossing and principally argues that such alleged duties are preempted by federal law.

Initially, the Court notes that the defendant does not specifically argue for summary relief as to whether the warning devices were properly maintained at the subject crossing. The plaintiffs do, however, mix the question of maintenance in with the issue of duty of choosing and installing a particular device. This opinion will not address maintenance.

CSX's argument is predicated upon the doctrine of federal preemption; which doctrine this Court proceeds to evaluate in light

of the pleadings and exhibits before the Court.

At first blush, nothing could seem clearer than the pronouncement found at 49 U.S.C. Sect. 20106, to wit:

Laws, regulations, and orders related to railroad safety shall be nationally uniform to the extent practicable. A State may adopt or continue in force a law, regulation, or order related to railroad safety until the Secretary of Transportation prescribes a regulation or issues and order covering the subject matter of the State requirement. A State may adopt or continue in force an additional or more stringent law, regulation, or order related to railroad safety when the law, regulation, or order—

(1) is necessary to eliminate or reduce an essentially local safety hazard;

(2) is not incompatible with a law, regulation, or order of the United States Government; and

(3) does not unreasonably burden interstate commerce.

■ Despite, however, the apparent clarity of the above statute, the United States Supreme Court has recently been called upon to construe the meaning and scope of the phrase: "covering the subject matter."

In *CSX Transportation, Inc. v. Easterwood,* 507 U.S. 658, 113 S.Ct. 1732, 123 L.Ed.2d 387 (1993) the Court relevantly held that in order for regulations to have a preemptive effect it must be established that said regulations do more than "touch upon" or "relate to" the subject matter. Specifically, the Court stated that " 'covering' is a more restrictive term which indicates that pre-emption will lie only if the federal regulations substantially subsume the subject matter of the relevant state law." *Id.* at 664, 113 S.Ct. at 1738.

The particular regulations which must be examined in order to determine if they "cover" or "substantially subsume" the otherwise controlling state law are those promulgated by the Federal Highway Administration (FHWA), which are generally set out at 23 C.F.R. pts. 646, 655, 924, and 1204.

Fortunately, this ground has already been plowed in this district and Circuit in the case of *Hester v. CSX Transportation, Inc.,* 61 F.3d 382 (1995), with Writ of Certiorari therefrom being recently denied by the United States Supreme Court.

■ Relevantly, the court of appeals, in affirming the opinion of United States District Court Judge Walter J. Gex III, found that the regulations set forth in 23 C.F.R. Sec. 646.214(b)(3) and (b)(4) covered the subject matter. Said regulations, as set forth in *Hester,* provide:

Section 646.214(b)(3) states,

"(i) **Adequate warning devices,** under [section] 646.214(b)(2) or on any project where Federal-aid funds participate in the installation of the devices are to include automatic gates with flashing light signals when one or more of the following conditions exist:

(A) Multiple main line railroad tracks.

(B) Multiple tracks at or in the vicinity of the crossing which may be occupied by a train or locomotive so as to obscure the movement of another train approaching the crossing.

(C) High Speed train operation combined with limited sign distance at either single or multiple track crossings.

(D) A combination of high speeds and moderately high volumes of highway and railroad traffic.

(E) Either a high volume of vehicular traffic, high high number of train movements, substantial numbers of school buses or trucks carrying hazardous materials, unusually restricted sight distance, continuing accident occurrences, or any combination of these conditions.

(F) A diagnostic team recommends them.

(ii) In individual cases where a diagnostic team justifies that gates are not appropriate, FHWA may find that the above requirements are not applicable."

Section 646.214(b)(4) provides,

"For crossings where the requirements of section 646.214(b)(3) are not applicable, the type of warning device to be installed,

whether the determination is made by a State regulatory agency, State highway agency, and/or the railroad, is subject to approval of FHWA."

*Id.* at 385 n. 4.

The foregoing is not surprisingly focused upon by the plaintiffs, especially subparts (B) and (D) of (b)(3). However, this Court's attention is drawn not so much to what conditions can be used to justify or even "cry out" for active crossing warning devices, but what the Court finds interesting is the fact that the regulation is missing any language from which one might infer that the railroad has the final say in what specific devices will be purchased with the federal "participating" funds. In stark contrast to the foregoing absence of any conclusive say-so by the railroad one cannot avoid seeing the repeated instances in (b)(3) and (b)(4) which grant final say-so to the FHWA.

The Court is mindful of 23 U.S.C. Section 409 which is clearly intended to promote the free exchange of ideas by those charged with exploring all possible ways in which to promote highway safety. Possibly at a trial on the merits, but for the pre-emption doctrine and if the choice of the type of warning device could be determined to be a duty of the defendant, said statute would be relevant. As to the matter at hand, however, this Court does not need to consider the findings of a diagnostic team or even if a study was in fact carried out. It is clear that in any event and irrespective of the finding, if any, of such teams, the Secretary of Transportation has the last word.

According to *Easterwood* and *Hester,* the dispositive question on the issue under consideration is whether federal funds participated in the installation of the crossbucks which were in place at the DeLauney Street crossing on the evening of September 13, 1994.

As to this question, the defendant presents this Court with the affidavit of Newton McCormick, Jr., the State Rail Engineer of the Rails Division of the Mississippi Department of Transportation. In his affidavit, McCormick attests that he has personal knowledge of how federal funds were used "in upgrading and improving railroad warn-ing signs, signals and markings of railroad crossings over the CSX tracks along the Mississippi Gulf Coast from Alabama to Louisiana." He also specifically attested to the fact that "federal funds were used, ..., at the DeLauney Street Crossing, Biloxi, Mississippi."

In an effort to discredit McCormick's affidavit, the plaintiffs offer only documents which, at best, suggest that prior to the improvements which were effected by use of federal funds, there existed at the subject crossing a similar crossbuck. Such falls short of creating an issue of fact with respect to whether federal funds were used in the improvements.

In the interest of time and judicial economy, this Court finds that the defendant, CSX, by its pleadings, affidavits and exhibits thereto, has met its burden pursuant to Rule 56 of the Federal Rules of Civil Procedure and that the plaintiffs have offered no evidence which suffices to create an inference that there exists a genuine issue of material fact. Thus, as to the question of whether the defendant had any affirmative duty on the day and at the location in question to provide a different type of warning device, this Court finds the argument of the defendant to be controlling under the doctrine of federal pre-emption.

### B. Speed Pre-emption

■ Initially, as to this issue, the Court notes that it views the Defendant's motion as requesting that the Plaintiffs be prohibited from asserting what would be a "negligence per se" count based upon the presumption that the speed of the train was excessive at the time and place in question.

The Court also begins by observing that its opinion as to this issue is predicated in part upon the Court's reading of *Easterwood, supra,* as allowing, if applicable, a suit based upon "related tort law duties, such as the duty to slow or stop to avoid a specific, individual hazard." 507 U.S. at 675 n. 15, 113 S.Ct. at 1743 n. 15.

The Plaintiffs' response to the subject motion presents two distinct arguments:

(A) That the subject train was exceeding the speed at the time and location, considering the nature of the cargo; and

(B) That the failure of the Defendant to produce certain hard data in the form of reports manually prepared by its employee and computer generated data. Both of these data, which the Plaintiffs assert would support their claim, are alleged by the Plaintiffs to have been willfully destroyed in bad faith by the Defendant.

Although not all of the following are deemed to be relevant to the question of pre-emption, the record before the Court reveals the following:

1. The track being used on the day and time in question was a "class four" track, which, according to 49 C.F.R. section 213.9(a) (1992), limits such trains to a maximum speed of 60 mph.;

2. The subject train, due to its cargo, was classified by CSX as a "Key Train;"

3. CSX requires, by its own Operational Rule 9, that "Key Trains" "will not exceed 50 MPH;"

4. CSX "Time Table" speed for the stretch of track in question was 45 mph;

5. Robert Jones, engineer of the subject train, testified that the speed of the train prior to the accident was 42 mph;

6. Jones further testified that, based on his personal observations, prior to the accident he recorded "accurate" readings for all meters and gauges on board the locomotive on a work report known as a 5001–B;

7. Although neither the 5001–B form nor the information which is normally generated by the locomotive's on-board computer was available, CSX expert, Dr. Glenn A. Burdick, using the "accurate" readings observed by the engineer, calculated the speed of the train at 39 mph +/− 5 mph; and

8. The Plaintiffs produced no evidence regarding the speed of the train.

*1. Adverse Inference*

■ Due to the fact that the form 5001–B and the data from the on-board computer was lost or destroyed, thus preventing or hindering the Plaintiffs from developing evidence to contradict the Defendant's testimony regarding the speed of the train, Plaintiffs seek an "adverse inference" ruling.

As the answer to this question is potentially dispositive as to the Court's ruling on the speed pre-emption issue, the Court will address same first.

This Court has previously had an occasion to research the subject of "adverse inference" in *Hughes v. CSX Transportation, Inc.,* Civil Action No. 1:92–cv–617RR.

As in *Hughes,* this Court relies herein upon established law of the United States Court of Appeals for the Fifth Circuit. In *Vick v. Texas Employment Commission,* 514 F.2d 734, 737 (5th Cir.1975); a case which has been repeatedly relied upon and cited to, the court relevantly held that for a party to draw an "adverse inference" when records are lost or destroyed, the destruction must be such as to indicate "bad conduct of the defendant."

Citing to two major treatises on evidence, the *Vick* court set out: " 'Moreover, the circumstances of the act must manifest bad faith. Mere negligence is not enough, for it does not sustain an inference of consciousness of a weak case.' " (Citations omitted). *Id.*

Having carefully reviewed the record in light of the applicable law, this Court finds the requisite evidence of "bad conduct of the defendant" to be lacking and thus the Court denies the Plaintiffs' request for an "adverse inference."

*2. Speed of the Train at the particular "time and place"*

The Plaintiffs have asserted that the Defendant "[c]arelessly and negligently operated its aforesaid train at an excessive rate of speed under the circumstances." This choice of terminology prompts the Court to state its holding in two parts, to wit:

1. To the extent that the phrase "under the circumstances" refers to the "time and place", *Easterwood* directs that the Secretary of Transportation's regulation at 49 C.F.R. section 213.9(a) (1992) controls and any other speed limitation, whether self-imposed by

CSX or otherwise, is pre-empted by the aforestated federal regulation.

2. To the extent that the above phrase is understood to assert, for example, that the Defendant breached a related tort law duty such as the duty to slow or stop a train to avoid a specific, individual hazard, such is not pre-empted.

### CONCLUSION

Based upon the pleadings, depositions, affidavits and exhibits before this Court, in light of the applicable law, the Court sustains the Defendant's Motion for Partial Summary Judgment as follows:

I. The Plaintiffs' claims which purport to assert that the Defendant failed to install, or cause to be installed, different or more effective warning devices at the subject crossing are preempted; and

II. The Plaintiffs' claim to the effect that the subject train's speed was too fast for the time and place is also pre-empted.

**SO ORDERED AND ADJUDGED.**