United States Court of Appeals,

Eleventh Circuit.

No. 96-4737.

Rashool BASHIR, as Personal Representative for the Estate of Warith Dean Bashir, Plaintiff-Appellant,

v.

AMTRAK, a.k.a. National Railroad Passenger Corporation, CSX Transportation, Inc., a Virginia corporation, Defendants-Appellees.

Aug. 19, 1997.

Appeal from the United States District Court for the Southern District of Florida. (No.95-6171-CIV-LCN),Lenore C. Nesbitt, Judge.

Before ANDERSON and BIRCH, Circuit Judges, and WOODS[*], Senior District Judge.

PER CURIAM:

Appellant/plaintiff Rashool Bashir[1] filed this wrongful death suit in state court against defendants/appellees, the National Railroad Passenger Corporation (Amtrak) and the CSX corporation. Appellant's son was struck and killed by an Amtrak train[2] at a crossing in Lakeland, Florida.[3] On appeal, we address only an issue relating to appellant's claim that appellees operated the train at an excessive speed.[4]

*BACKGROUND[5]*

After removing the case to federal court and filing an answer, appellees filed a motion for summary judgment arguing that federal preemption pursuant to the Federal Railroad Safety Act of

---

[*]Honorable Henry Woods, Senior U.S. District Judge for the Eastern District of Arkansas, sitting by designation.

[1]Appellant is the personal representative of the estate of Warith Dean Bashir.

[2]The CSX corporation owned the railroad tracks.

[3]The sad facts involving the death of this eleven year old boy are heart-wrenching. However, the only issue which is close enough to warrant discussion is a strictly legal issue.

[4]Appellant's other arguments on appeal are without merit and warrant no discussion.

[5]Parts of this opinion directly quote the district court's version of the undisputed facts or procedural background.

1970 (FRSA), 45 U.S.C. § 421, *et seq.*[6] barred appellant's claims. The district court granted summary judgment in favor of appellees. The court applied the Supreme Court's decision in *CSX Transportation, Inc. v. Easterwood,* 507 U.S. 658, 113 S.Ct. 1732, 123 L.Ed.2d 387 (1993), and concluded that appellant's excessive speed claim was preempted by federal law, unless the evidence demonstrated that the train was traveling in excess of 80 miles per hour (mph) when it struck decedent. The district court stated the following:

> In *Easterwood,* the Court held that ... the federal regulation setting maximum operating speeds, 49 C.F.R. § 219.9(a), also covers the applicable subject matter and therefore preempts conflicting state laws. [507 U.S. at 673-74,] 113 S.Ct. at 1742-43. Accordingly, § 213.9(a), which sets maximum speed of eighty miles per hour for trains traveling through the Interlachen Crossing, preempts state tort laws to the extent they impose contrary maximum speeds on such trains. Plaintiff's excessive speed claims are therefore preempted unless the evidence demonstrates that the train was traveling in excess of eighty miles per hour when it struck Decedent.

The district court concluded that appellees had upheld their initial burden under the summary judgment standard by offering evidence to negate appellant's claim that the train exceeded 80 mph. The court looked to the testimony of the train's engineer, Richard Mascio; the assistant engineer, Leonard Cooke; and the conductor, Charles Fowler. All three of these witnesses testified that the train was traveling at a speed of 70 mph at the time it struck decedent.[7] The court found that appellant had failed to offer evidence of the train's speed. The court considered and rejected appellant's argument that an issue of fact existed on the excessive speed claim because appellees had failed to preserve the portion of the speed recorder tape[8] which documented the trip from Tampa, Florida to Jacksonville, Florida, and thus would have recorded the train's speed at the time it struck appellant's son.[9] According to appellant, the speed recorder tape was the most reliable indicator of the train's speed, and the absence of the speed recorder tape raised a question of fact as to the actual

---

[6]The FRSA was revised in 1994, and is now codified at 49 U.S.C. § 20101 *et seq.*

[7]We discuss the facts in more detail below.

[8]The subject train was equipped with a speed recording device mounted to the engine; that device contained a tape which continuously documented the train's speed.

[9]The accident occurred in Lakeland, Florida, which lies en route between Tampa and Jacksonville. The portion of the tape covering the trip from Jacksonville to Washington, D.C. was recovered.

speed of the train at the moment of impact. In other words, appellant urged an adverse inference from the loss of the tape.

## ISSUE

The only issue we address on appeal is whether the district court should have applied the adverse inference rule and found that an issue of fact existed as to whether the train was traveling above the 80 mph speed limit at the time it struck decedent.

## DISCUSSION

In this circuit, an adverse inference is drawn from a party's failure to preserve evidence only when the absence of that evidence is predicated on bad faith. *Vick v. Texas Employment Comm'n,* 514 F.2d 734, 737 (5th Cir.1975).[10] "Mere negligence" in losing or destroying the records is not enough for an adverse inference, as "it does not sustain an inference of consciousness of a weak case." *Id.* (quoting McCormick, Evidence § 273 at 660-61 (1972), 31A C.J.S. Evidence § 156(2) (1964)); *see also Aramburu v. The Boeing Co.,* 112 F.3d 1398, 1407 (10th Cir.1997). Thus, under the "adverse inference rule," we will not infer that the missing speed tape contained evidence unfavorable to appellees unless the circumstances surrounding the tape's absence indicate bad faith, e.g., that appellees tampered with the evidence. We agree with the district court that there was no probative evidence in this case to indicate appellees purposely lost or destroyed the relevant portion of the speed tape. And, under the particular circumstances of the instant case, we readily conclude that the district court did not err in declining to draw an adverse inference from the loss of the tape.

In engineer Mascio's deposition testimony, he testified that at the time of impact, his reflexes caused him to glance at the speedometer and apply the brakes all at once.[11] At that time, Mascio was seated in the locomotive console, where the illuminated, eight-inches-in-diameter speedometer was

---

[10]In *Bonner v. City of Prichard,* 661 F.2d 1206 (11th Cir.1981) (en banc), this court adopted as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

[11]Mascio, who has over twenty years of experience, explained that his automatic reflex before striking an object, whether it be a person, a deer or a dog, is to apply the brakes while simultaneously glancing at the speedometer. He explained that, although right before the accident he was looking straight ahead at the crossing's green proceed signal, when he realized he was going to hit someone, he glanced at the speedometer.

within his field of vision. The rest of Mascio's deposition testimony is consistent with his testimony that he saw the speed at the time of impact, as he had been closely monitoring the speed prior to the accident. Approximately 900 feet before the intersection where the accident occurred, the train had crossed an overpass and then had rounded a curve. Mascio estimated that the train traveled over the last small overpass at roughly 63 mph, and then proceeded into the curve at about 65 mph. Mascio explained that the downhill grade caused the train to speed up from the overpass to the curve. He further explained that his experience had taught him that if the train's speed entering the curve was 65 mph, then coming out of the curve and headed back uphill, the rear car would be going 70 mph.

In addition to Mascio's deposition testimony, assistant engineer Cooke stated in an affidavit that he looked at the speedometer at the time of impact, and noted that the train's speed was 70 mph. Furthermore, the train's conductor, Fowler, reported in his Unusual Occurrence Report that the train's speed was 70 mph. In his deposition testimony, Fowler explained that his report of the train's speed was based on statements by both Mascio and Cooke subsequent to the accident. Cooke and Mascio had also reported to Police Officer Timothy Vickers that the train had been traveling at 70 mph.

Finally, it is undisputed that neither Mascio nor Cooke had control over the content or fate of the speed tape, or had any contact with anyone who did have control over the tape; that both of these witnesses knew that the speed of the train was routinely recorded and that the tape would thus show the speed of the train at the time of the accident; and thus that at the time these two witnesses reported 70 mph to the police officer and to Fowler for his Unusual Occurrence Report, they necessarily would have thought that the speed tape would also evidence the speed of the train at the time of the accident. These circumstances constitute exceedingly strong evidence that the train was in fact going 70 mph.

Appellant has adduced absolutely no evidence that the train was traveling at a speed other than 70 mph. The only evidence adduced by appellant is the unexplained absence of the speed tape. As noted above, however, an adverse inference from the missing speed tape is permissible only if the circumstances surrounding its absence indicate bad faith (e.g., tampering). Appellant has

adduced absolutely no evidence of bad faith or tampering.

Under all the circumstances of this case, we agree with the district court that the missing tape gives rise to no adverse inference, and that no reasonable jury could conclude that the train was traveling in excess of 80 mph. We recognize that this case is somewhat different from *Vick.* There was an innocent explanation for the destruction of the evidence in *Vick*—i.e., "the records were destroyed under routine procedures without bad faith." 514 F.2d at 737. Here the loss of the speed tape is wholly unexplained. We need not decide whether a wholly unexplained loss of evidence might in other circumstances warrant an inference of bad faith and thus an adverse inference. In this case, where the evidence is exceedingly strong that the train was in fact traveling at 70 mph and where there is no evidence at all that Mascio or Cooke had any motive or opportunity to try to tamper with the tape, we conclude that an adverse inference is not warranted.

The circumstances of this case are somewhat similar to those in *Williams v. CSX Transportation, Inc.,* 925 F.Supp. 447 (S.D.Miss.1996), where the district court refused to find an adverse inference despite the fact that data regarding the subject train's speed was missing. In *Williams,* the defendant was unable to produce hard data— some manually prepared and some computer generated—regarding the subject train's speed. The plaintiff in *Williams* argued that the absence of the data indicated that it had been wilfully destroyed in bad faith. *Williams,* 925 F.Supp. at 452. After reviewing the record, the court found the evidence of bad conduct of the defendant to be insufficient to sustain an adverse inference. *Id.* Like the present case, in *Williams* the engineer of the train had testified that the train's speed prior to the accident was significantly below the speed limit; the train was 18 mph below the speed limit set by the federal regulations, and the train was 8 mph below the maximum speed allowed by the defendant's own operation rules. *Id.*

The present case is distinguishable from the case relied on by appellant, *Stanton v. National Railroad Passenger Corp.,* 849 F.Supp. 1524 (M.D.Ala.1994). In that case, the plaintiff argued that the subject train's speed tape was intentionally destroyed by the defendant, Amtrak. 849 F.Supp. at 1528. Because the defendants in *Stanton* could not explain why the tape had been destroyed, the court found that a question of genuine fact existed as to the motivation behind the defendant's

destruction of the speed tape.  *Id.*

First, in *Stanton* the subject train's engineer testified that at the time of the accident, the train was traveling only one mile per hour under the speed limit set by the federal regulations.  *Stanton,* 849 F.Supp. at 1528.  The present case does not involve the testimony of only one witness who stated the train was going only one mile per hour under the speed limit.  Two witnesses in this case testified that they personally observed that the train was traveling at a speed 10 mph below the maximum speed limit.  We agree with the district court that here, "the margin for error—ten miles per hour—is substantially greater."  In addition, the evidence in this case that the train was traveling 70 mph was exceedingly strong and there is no evidence that Mascio or Cooke had any motive or opportunity to try to tamper with the speed tape;  by contrast, in *Stanton,* it is unclear from the opinion that there was such strong evidence in favor of the railroad.  *See also Aramburu v. The Boeing Co.,* 112 F.3d 1398, 1407 (10th Cir.1997) (drawing no adverse inference where there was no evidence that records were lost in bad faith and there was other evidence proving the point).

*CONCLUSION*

Under the particular circumstances of this case, we think appellant presented insufficient evidence to create an issue of fact as to the subject train's speed.  We therefore affirm the district court's grant of appellees' motion for summary judgment.

AFFIRMED.