KORMAN, District Judge,
dissenting:
I agree with the conclusion of the majority opinion in Part III.C and its rejection of “enterprise coverage” based on 29 C.F.R. § 776.23(c). I also agree with the majority opinion that Josendis failed to come forward with sufficient evidence that, as part of his duties, he participated in the movement of any object in interstate commerce or travelled to Wall to Wall job sites outside of Florida.
I have some serious problems with respect to the issue whether Josendis is covered pursuant to the provisions of 29 U.S.C. § 203(s)(l)(A), which provides coverage to employees of an enterprise that (1) has employees who handle, sell, or otherwise work on goods or materials that had once moved in or been produced for interstate commerce, and (2) has gross sales of at least $500,000. Contrary to the majority, there is a compelling argument to be made that the district court should have denied the motion for summary judgment. The motion turns solely on the credibility of the affidavit of Jorge Acosta, one of the principals of Wall to Wall, which the jury would have a reasonable basis for discrediting. Indeed, there is uncontroverted evidence that the principals of Wall to Wall were engaged in a conspiracy to defraud the Internal Revenue Service by deliberately concealing and understating Wall to Wall’s gross income. Under these circumstances, the fact that Josendis was unable to come forward with “admissible evidence concretely establishing the true measure of Wall to Wall’s gross sales per year,” Maj. Op. at 1318, should not justify granting Wall to Wall’s motion for summary judgment.
I.
I begin with a discussion of the overtime wage provision, namely, whether Wall to Wall had gross sales of at least $500,000. Wall to Wall failed to produce any of its financial records for the years 2006 to 2008, “save for the 2006 tax return and a financial summary prepared by Acosta in preparation for a separate FLSA lawsuit previously filed against Wall to Wall.” Id. at 1304 n. 21. Jorge Acosta stated in *1322 support of the defendants’ motion for summary judgment that no tax returns were prepared for 2007 (or, apparently, for 2008). Acosta Decl. ¶ 4. Moreover, in an unsworn response to a document request, he alleged (in the words of the majority opinion) that, “[a]t some point after the initiation of Josendis’s suit [on July 25, 2008], Wall to Wall had been evicted from its office for not paying rent. Once the property owner reentered the premises, Wall to Wall’s business records were placed on the street. Neither Acosta nor Lim rescued those records, and they were lost forever.” Maj. Op. at 1304 n.21 (emphasis added). Nevertheless, the majority opinion finds that Wall to Wall “complied with the court’s instructions [ordering the production of these documents] and completed, to the best of its ability, the ordered discovery.” Id. at 1304. Moreover, the majority goes on to suggest — in the face of Wall to Wall’s admission that its business records “were lost forever” — that “Josendis might have obtained a corporate ledger indicating that Wall to Wall made at least $500,000 in 2006, 2007, or 2008.” Id. at 1318 n. 40.
While Wall to Wall’s explanation for its failure to produce its financial records is more imaginative than blaming it on a fire, I find it difficult to accept. Nor am I willing to fault Josendis for not producing documents that Wall to Wall, by its own admission, failed to preserve and allowed its landlord to dispose of as garbage. More importantly, a jury could conclude that the documents were either destroyed or not produced because they would have shown that Wall to Wall in fact had at least $500,000 in gross sales. Indeed, the majority opinion alludes to the doctrine of spoliation, pursuant to which “an adverse inference is drawn from a party’s failure to preserve evidence only when the absence of that evidence is predicated on bad faith.” Id. at 1310 n. 28 (internal quotation marks omitted). Nevertheless, the majority opinion suggests that it was up to Josendis to “have moved the district court to consider the destruction of Wall to Wall’s corporate records as a bad faith act of spoliation,” and that “[a]bsent a finding of spoliation, we cannot hold against Wall to Wall the loss of its financial records.” Id.
The doctrine of spoliation permits the trier of fact to draw an inference that, if records were destroyed in bad faith, it was done so to impede the opposing party from obtaining evidence that would support the latter’s position. More specifically, it provides a basis for denying a motion for summary judgment where there is sufficient probative evidence for a jury to find an act of spoliation and to draw the inference derived from such an act. Thus, in Bashir v. Amtrak, 119 F.3d 929, 931 (11th Cir.1997) (per curiam), we agreed with the district court that “there was no probative evidence in this case to indicate appellees purposely lost or destroyed the relevant portion of the [evidence].” Consequently, we concluded that the district court had not erred in rejecting the adverse inference and granting the motion for summary judgment. Id. By contrast, in Kroniseh v. United States, 150 F.3d 112, 127 (2d Cir.1998), a case in which this inference turned on the veracity of the defendants’ explanation for the destruction of relevant documents, “the district court presumed for purposes of considering the motion for summary judgment that defendants had an obligation to preserve the files and that the destruction was intentional,” and this approach was characterized as “sound” by the Second Circuit. A factual finding of spoliation is necessary only where the district judge seeks to impose a particular sanction beyond submitting the issue to the jury.
*1323 Nevertheless, I accept, for present purposes, the majority’s suggestion that, without a finding of bad faith by the district judge, we are precluded from considering whether Wall to Wall’s failure to produce its financial records supports an inference that would preclude summary judgment. The absence of those records, however, is not without consequence. The principal source of admissible evidence concerning Wall to Wall’s gross sales was the company’s own financial records. Because those apparently no longer exist, the evidence upon which the district court and the majority opinion conclude that Wall to Wall ought to prevail on summary judgment is the declaration of the principal alleged wrongdoer, Acosta, that Wall to Wall did not have at least $500,000 in gross sales in the years relevant to this lawsuit. This consideration, along with the inability of Josendis to obtain the relevant records, has a significant impact on the application of principles relating to summary judgment.
We have previously held that,
[i]n applying the basic principles [governing summary judgment,] the factor of access to proof must ... be seriously considered in ruling on a defendant’s motion for summary judgment, particularly ... where plaintiffs proof must come mainly from sources largely within the control of the defendants and from the mouths of the alleged wrongdoers.
Ala. Farm Bureau Mut. Cas. Co., Inc. v. Am. Fidelity Life Ins. Co., 606 F.2d 602, 609 (5th Cir.1979) (quoting 6 Moore’s Federal Practice P 56.17(60) at 56-1065 (1976 ed.)).[1] Consequently, “[s]ummary judgment should not ... ordinarily be granted before discovery has been completed.” Id. In the present case, discovery has not been completed because of the destruction of the most relevant evidence necessary for Josendis to establish his case and because the district court improperly constricted the scope of discovery. Thus, to cite one example, the district judge denied Josendis’s request to discover “[a]ll of the income reporting documents submitted by [Wall to Wall] to the Internal Revenue Service regarding the Plaintiff for [three calendar years prior to the filing of Josendis’s original complaint on July 25, 2008 (the ‘relevant period of time’) ].” Maj. Op. at 1308 (second and third alterations in original). The majority finds no abuse of discretion in this ruling because the request was “arguably irrelevant” in a case in which the issue is the amount of the gross sales that Wall to Wall engaged in during those years. Id. at 1310. Nevertheless, I decline to get involved in a nittygritty discussion of the various discovery rulings because, in the end, Josendis would never have obtained these documents, since Acosta had allowed them to be trashed.
This brings me to the second aspect of the relevant rule regarding the propriety of granting summary judgment in a case such as this. As Professors Wright, Miller, and Kane observe, “[t]he party opposing summary judgment does not have a duty to present evidence in opposition to a motion under Rule 56 in ... circumstances ... when there is an issue as to the credibility of the movant’s evidentiary material.” 10A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 2727, at 480, 485 (3d ed.1998). As described by one commentator, the question of when the burden will shift to the party opposing summary judg *1324 ment depends on the type of proof used by the moving party:
Thus if the proof in support of the motion is largely documentary and has a high degree of credibility the opponent must produce convincing proof attacking the documents in order to sustain his burden.... If the moving party’s proof is less convincing, as in cases where he relies on his own testimony or has exclusive knowledge of the transaction, the burden of providing evidence may never shift to the opponent.
John A. Bauman, A Rationale of Summary Judgment, 33 Ind. L.J. 467, 483-84 (1958) (alteration in original) (quoted in Wright, Miller & Kane, supra, at 486). Indeed, we have held that “[c]ases in which the underlying issue is one of motivation, intent, or some other subjective fact are particularly inappropriate for summary judgment, as are those in which the issues turn on the credibility of the affiants.” Ala. Farm Bureau Mut. Cas. Co., 606 F.2d at 609 (emphasis added) (quoting Slavin v. Curry, 574 F.2d 1256, 1267 (5th Cir.1978)). As Judge Frank observed in one of the leading cases on this issue,
where ... the facts asserted by movant are peculiarly within the knowledge of the movant, then the opponent must be given the opportunity to disprove that fact by cross-examination and by the demeanor of the movant while testifying. In such a case — a case like the one before us — the failure of the opponent to file a counter-affidavit has no significance.
Subin v. Goldsmith, 224 F.2d 753, 760 (2d Cir.1955); see also Ala. Great S. R.R. Co. v. Louisville & Nashville R.R. Co., 224 F.2d 1, 5 (5th Cir.1955) (describing Subin as “a thorough going exposition of why a summary judgment should, and should not, be granted”); Shahid v. Gulf Power Co., 291 F.2d 422, 424 (5th Cir.1961); Fed. R.Civ.P. 56 advisory committee’s note to 1963 amendment (“Where an issue as to a material fact cannot be resolved without observation of the demeanor of witnesses in order to evaluate their credibility, summary judgment is not appropriate.”).
A corollary of this principle is the long-recognized prerogative of the jury to disbelieve the testimony of a party and conclude that the opposite of his testimony is true. Judge Learned Hand’s oft-quoted observation, which has been echoed by the Supreme Court, NLRB v. Walton Mfg. Co., 369 U.S. 404, 408, 82 S.Ct. 853, 7 L.Ed.2d 829 (1962) (per curiam); Wright v. West, 505 U.S. 277, 296, 112 S.Ct. 2482, 120 L.Ed.2d 225 (1992), is particularly apposite here. Specifically, Judge Hand observed that demeanor “evidence may satisfy the tribunal, not only that the witness’ testimony is not true, but that the truth is the opposite of his story; for the denial of one, who has a motive to deny, may be uttered with such hesitation, discomfort, arrogance or defiance, as to give assurance that he is fabricating, and that, if he is, there is no alternative but to assume the truth of what he denies.” Dyer v. MacDougall, 201 F.2d 265, 269 (2d Cir.1952); see also NLRB v. Dixie Gas, Inc., 323 F.2d 433, 435-36 (5th Cir.1963). Indeed, even in a criminal case, where a defendant cannot be forced to testify, we have held that
a statement by a defendant, if disbelieved by the jury, may be considered as substantive evidence of the defendant’s guilt.... To be more specific, we have said that, when a defendant chooses to testify, he runs the risk that if disbelieved “the jury might conclude the opposite of his testimony is true.”
United States v. Brown, 53 F.3d 312, 314 (11th Cir.1995) (quoting Atkins v. Singletary, 965 F.2d 952, 961 n. 7 (11th Cir. 1992)); see also West, 505 U.S. at 296, 112 S.Ct. 2482. There is, to be sure, the cave *1325 at that the jury’s disbelief alone may be insufficient by itself to justify a conviction in a criminal case or a verdict in favor of the opposite party in a civil case; some corroborative evidence may be required to support the verdict. Waffenschmidt v. MacKay, 763 F.2d 711, 724 (5th Cir.1985); United States v. Marchand, 564 F.2d 983, 985-86 (2d Cir.1977). Indeed, notwithstanding his observation about the significance of demeanor evidence, Judge Hand observed that a verdict in favor of the plaintiff solely on the basis of its disbelief of the defendant would not be sufficient to justify a judgment in his favor. Dyer, 201 F.2d at 269. Nevertheless, the foregoing caveat is inapplicable if independent evidence supports the inference that the truth is the opposite of the facts to which a party witness testified. See United States v. Spencer, 129 F.3d 246, 251 (2d Cir.1997) (“The rule in Dyer is inapplicable if independent evidence supports the government’s case.”); see also United States v. Bisen, 974 F.2d 246, 262 & n. 6 (2d Cir. 1992).
In my view, a reasonable jury could conclude that Jorge Acosta is not worthy of belief and that the opposite of his testimony is, in fact, true. Passing over the fact, to which I’ve already alluded, that Wall to Wall concededly allowed its records to be trashed after the commencement of this lawsuit and failed to come forward with so much as a sworn affidavit explaining the circumstances regarding its failure to produce those records, Josendis came forward with substantial evidence to support his claim. Specifically, the affidavit of Josendis, as well as those of Troy Allan Whitten and Wilard Dulanto, see R 37, provide an ample basis for concluding that Wall to Wall must have been, like many such construction enterprises (which also often employ illegal aliens), an on-and-off-the-books operation and that Acosta was engaged in a blatant scheme to defraud the IRS. These affidavits, which are based on personal knowledge, and which are not controverted by Wall to Wall, establish that, for a period of time in 2007, Wall to Wall employees (including Whit-ten) worked only at the Miami Jewish Hospital (“MJH”). Acosta told Whitten that the MJH “wanted him to repair all 101 apartments” at the facility. Moreover, based on what Jorge Acosta told Whitten, “Wall to Wall Residences was paid between thirteen and fourteen [thousand dollars] ($13,000-$14,000) per unit.” Acosta asked Whitten to pick up the checks, which were usually in a closed envelope. Acosta instructed him to open the envelope to verify that the amount written on the check was correct. More significantly, Whitten “noticed that the checks were made out to Jorge Acosta.”
This was not the only instance that Whitten noticed of checks made out to Jorge Acosta and his wife. Whitten’s affidavit also attested to the fact that “Acosta also instructed customers to write checks to [Whitten’s] name (for work done by Wall to Wall). [Whitten] would cash the check and then give the cash to Acosta.” This occurred at least “two or three times monthly.” Finally, “Acosta would also write company checks directly to [Whitten] for one or two thousand dollars and then [Whitten] would cash the checks [at a check cashing store] and give the cash to Acosta.” The check cashing store was identified in the affidavit. Although the affidavit of Wilard Dulanto was not as detailed, he nevertheless confirmed the work at the MJH from 2007 to 2008 and expressly stated he had been given a check for $11,000 in a closed envelope, which he saw was made out to Acosta.
The contents of the verified amended complaint, which are set out on page 13 of the majority opinion, are also entirely consistent with these two affidavits. The *1326 combination of the three, in the words of the majority opinion, “establishes that Wall to Wall potentially earned $56,000 for one job in 2007; approximately $120,000 for kitchen remodels also in 2007; $5,000 for an unknown project at an unknown date; and about $434,000 for work at the Miami Home over a two-year period in 2007 and 2008.” Maj. Op. at 1318. Nevertheless, the majority concludes that, because “Josendis and Whitten did not ground their projections in admissible evidence concretely establishing the true measure of Wall to Wall’s gross sales per year, nor did they explain how they came to their belief that Wall to Wall had earned $500,000 in any one of the relevant years, we cannot accept their word on the matter.” Id. While the majority opinion may be correct in its suggestion that the affidavits are not based on “admissible evidence concretely establishing the true measure of Wall to Wall’s gross sales per year,” the reason for this is that Wall to Wall failed to retain required financial records.
Moreover, there is also evidence that Acosta submitted a false declaration in this case, alleging that he fired Josendis after learning that Josendis was an illegal alien. Acosta Decl. ¶ 6. A letter he wrote to Josendis, however, clearly indicates that such a termination did not occur for the reasons alleged by Wall to Walk R 23, Josendis Aff., Ex. A. Indeed, when pressed at oral argument, Wall to Wall’s counsel grabbed onto the life preserver that a member of the panel generously tossed him by conceding that, at the very least, this was an issue of fact.
Under these circumstances, a jury would be perfectly justified in returning a verdict in favor of Josendis based on a finding (1) that Wall to Wall generated substantial revenues, (2) that Acosta and his wife were both engaged in a scheme to defraud the IRS, which included conduct that caused the earnings of Wall to Wall to be significantly understated, and (3) that Acosta was a liar and that the opposite of his testimony was true. These inferences become even more compelling because of Wall to Wall’s inability to produce its own financial records. And this is so whether or not the jury believed the preposterous claim, assuming Acosta was willing to testify to it under oath, that his former landlord carried the documents to the street (after Josendis filed his complaint) from which they disappeared forever.
II.
I turn now to the first prong of 29 U.S.C. § 203(s)(l)(A), which requires that, in addition to gross sales of at least $500,000, the enterprise use goods or materials that had once moved in interstate commerce. Specifically, relying on Flores v. Nuvoc, Inc., 610 F.Supp.2d 1349 (S.D.Fla.2008), Wall to Wall invoked the “coming to rest” doctrine, according to which, “[w]here the enterprise acquired from within the state the goods or materials used by its employees and has no role in causing goods or materials to move in interstate commerce to employees for their use in the business, enterprise coverage is not triggered.” Br. at 26 (quoting Flores, 610 F.Supp.2d at 1354). The problem with this argument is that we explicitly rejected it in Polycarpe v. E & S Landscaping Serv., Inc., 616 F.3d 1217 (11th Cir.2010) (per curiam), which decided six cases consolidated for appeal, including one in which Wall to Wall was a defendant, Vallecillo v. Wall to Wall Residence Repairs, Inc., 595 F.Supp.2d 1374 (S.D.Fla.2009). In the course of describing the district court holding in Vallecillo, we observed that “[b]e-cause one of [the] uncontested facts was that Defendants bought all materials from local retailers, the district court [erroneously] concluded that there was no com *1327 merce as defined in the FLSA.” Polycarpe, 616 F.3d at 1227 n. 10. The Acosta declaration in this case, which presumably mirrors the one he filed in Vallecillo, says no more than that Wall to Wall “purchased tools and supplies from local retailers (primarily Home Depot) in South Florida. We have never bought or sold anything across state lines.” Acosta Decl. ¶ 2. This declaration is no more adequate here than it was in Vallecillo to justify summary judgment for Wall to Wall on this premise. See Polycarpe, 616 F.3d at 1227 n. 10.
While the majority does not reach the merits of this claim, because it concludes that Josendis failed to satisfy the $500,000 element of the FLSA’s overtime wage provision, I would not address the issue for a different reason. Wall to Wall opened its brief on appeal here with an expression of its “desire to adopt the Brief submitted in Vallecillo v. Wall to Wall Residence Repairs, Inc., Case No. 08-22271-CIV-ZLOCH [595 F.Supp.2d 1374].” Br. at viii. Nevertheless, it failed to call to our attention the ultimate decision in the Polycarpe case, which vacated the district court decision in Vallecillo, and is clearly adverse to Wall to Wall in this case. Nor did Wall to Wall seek a remand to the district court for consideration of the argument the majority raises sua sponte, namely, whether the term “materials” in the FLSA means “tools or other articles necessary for doing or making something.” Maj. Op. at 1319 (quoting Polycarpe, 616 F.3d at 1223-24). The failure of Wall to Wall to do so is not surprising, since it is inconceivable that a construction company would not be using materials, for the purpose of “doing or making something,” that previously moved in interstate commerce. Under these circumstances, I would reverse the order granting Wall to Wall’s motion for summary judgment without addressing the issue.
III.
I recognize that the result for which I have argued would require us to reach the issue whether Josendis, an illegal alien, is entitled to the protection of the FLSA. I agree with the position expressed in the letter brief submitted by the Solicitor of the United States Department of Labor, which we requested, that “undocumented workers are entitled to recover minimum wages and overtime pay for hours worked under the FLSA,” DOL Letter at 10, as another panel of the Eleventh Circuit recently held in an unpublished opinion, Gal-dames v. N & D Inv. Corp., Nos. 10-11984, 10-14523, 2011 WL 2496280 (11th Cir. June 23, 2011) (per curiam), following Eleventh Circuit precedent, Patel v. Quality Inn South, 846 F.2d 700 (11th Cir.1988). Nor would a contrary result deter illegal aliens seeking employment in the United States. Instead, denying them the protection of the FLSA would only encourage employers to hire illegal aliens, as opposed to citizens, because in so doing employers could avoid the expense of complying with the FLSA. Such a result is contrary to public policy and, for that reason alone, we should reject Acosta’s suggestion that we decline to follow binding precedent on this issue.[2]
*1328 IV.
The judgment of the district court should be reversed, and the case should be remanded for trial.

. We have adopted as binding precedent the decisions of the Fifth Circuit decided before October 1, 1981. Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc).

. The majority also affirms the imposition of sanctions in the amount of $330 against Josendis’s attorney for fees incurred by Wall to Wall in opposing Josendis’s discovery demands. This is a result with which I also disagree. In my view, Wall to Wall forfeited any right to sanctions because of the misconduct that it engaged in by making no effort to preserve critical business records and allowing them to be treated as garbage by its landlord' — assuming anyone believes this unsworn and fanciful explanation. Indeed, if any sanctions are warranted in this case, the district court should have imposed sanctions on the defendants and not on Josendis’s attorney.