[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MARCH 15, 2012
JOHN LEY
CLERK

No. 11-14100
Non-Argument Calendar

_____

D.C. Docket No. 3:09-cv-00919-MHT-TFM


AUSTIN CHAZ RAMSEY,

                                                       Plaintiff-Appellant,

                              versus

ARNOLD GAMBER,

                                                       Defendant-Appellee.


_____

Appeal from the United States District Court
for the Middle District of Alabama

_____

(March 15, 2012)

Before BARKETT, HULL and ANDERSON, Circuit Judges.

PER CURIAM:

Plaintiff Austin Ramsey appeals (1) the district court's February 7, 2011 order granting summary judgment in favor of Defendant Arnold Gamber on Ramsey's state-law claims of negligence and wantonness[1] and (2) its separate August 18, 2011order denying his motion to alter, amend or vacate the district court's summary judgment order, pursuant to Federal Rule of Civil Procedure 59(e). After review, we affirm.

As an initial matter, Ramsey's brief makes no argument and cites no authority relevant to the district court's denial of his Rule 59 motion. Accordingly, this issue is deemed abandoned. Carmichael v. Kellogg, Brown & Root Servs., Inc., 572 F.3d 1271, 1293 (11th Cir. 2009) ("The law is by now well settled in this Circuit that a legal claim or argument that has not been briefed before the court is deemed abandoned and its merits will not be addressed." (internal quotation marks omitted)). In any event, the district court did not abuse its discretion by denying the Rule 59(e) motion because the evidence Ramsey sought to introduce was available months before the district court granted summary judgment.[2] See Drago v. Jenne, 453 F.3d 1301, 1305 (11th Cir. 2006).

---

[1] The district court's jurisdiction was based on diversity of citizenship. See 28 U.S.C. § 1332.

[2] Ramsey's appellate brief also does not address the district court's grant of summary judgment for Defendant Gamber on Ramsey's claim of "interference with the physician/patient relationship." This issue is also deemed abandoned. See Carmichael, 572 F.3d at 1293.

("[T]his court reviews the denial of a Rule 59 motion for an abuse of discretion."). Thus, we discuss only the factual background and law relevant to Gamber's motion for summary judgment.

## I.  BACKGROUND

**A.  Ramsey's Injury**

Plaintiff Austin Ramsey was a scholarship football player for Auburn University.  In December 2007, Ramsey injured his spine while lifting weights. Dr. Michael Goodlett was responsible for the health of all Auburn athletes.  After physical therapy failed to relieve Ramsey's injury, Dr. Goodlett referred Ramsey to an orthopedic surgeon.

In April 2008, Ramsey underwent spinal surgery.  The surgery was successful, and in May 2008 the surgeon cleared Ramsey for a return to regular training.

Defendant Arnold Gamber was Auburn's head football trainer.  In May 2008, Dr. Goodlett met with Defendant Gamber and Kevin Yoxall, Auburn's strength coach, to develop a six-week rehabilitation schedule for Plaintiff Ramsey. That rehabilitation schedule permitted Ramsey (1) to run and jog only for two to three days, initially, then (2) to run and complete exercises using only Ramsey's

3

own body weight, and (3) finally, to perform seated upper-body weight-lifting and leg-presses. Yoxall was responsible for designing athletes' daily weight-room regimens. Defendant Gamber was not responsible for supervising Yoxall or the weight-room assistants.

Dr. Goodlett approved Plaintiff Ramsey's rehabilitation plan. When he was leaving the May 2008 meeting, Dr. Goodlett observed that Defendant Gamber and Yoxall "were putting together a written plan." Defendant Gamber testified that Dr. Goodlett verbally approved this plan. Dr. Goodlett later saw a copy of Ramsey's rehabilitation plan. However, no copy of the plan was introduced into evidence and none was found in Ramsey's medical chart.

Beginning in late May 2008, Plaintiff Ramsey began his rehabilitation with running and stretching for two days. Ramsey reported no pain from these exercises. On June 2, 2008, Ramsey went to the weight room to begin the second part of his rehabilitation, which permitted Ramsey to exercise using only his own body weight. At the weight room, Paul Creighton, an assistant to Yoxall, instructed Ramsey to perform squats and "box step ups" while wearing a 50-pound weighted vest and holding two 35-pound dumbbells. In his deposition, Ramsey testified that in the weight room on June 2, he asked Creighton whether he was

"supposed to be doing those."[3]  According to Ramsey, Creighton replied, "they're on the list.  I don't know who made it up."  Ramsey performed two sets of these exercises on June 2.  During the second set, he immediately felt the same pain and tingling in his leg that he experienced before his surgery.  Ramsey immediately stopped exercising.

After Plaintiff Ramsey's June 2, 2008 weight training, Dr. Goodlett examined Ramsey and found that Ramsey had re-injured his back.  In January 2009, Ramsey had surgery again.  Following this second surgery, Ramsey decided not to play football, and he was medically disqualified from football due to the risk of further injury.

## B.  Ramsey's Lawsuit

In July 2009, Plaintiff Ramsey filed a six-count complaint against Defendant Gamber, who later moved for summary judgment on all claims.[4]  Ramsey opposed Gamber's summary judgment motion, but only as to Ramsey's state-law claims that: Gamber negligently caused or allowed Ramsey to be exposed to increased risk of injury by requiring him to lift weights against his

---

[3] In his deposition, Ramsey did not identify the weight-room assistant as Paul Creighton.

[4] Ramsey's complaint also named as a codefendant Hugh Nall, Auburn's assistant football coach.  However, Ramsey voluntarily dismissed his claims against Nall before summary judgment.

physician's instructions (Count 1); Gamber wantonly caused or allowed Ramsey to be exposed to increased risk of injury by requiring him to lift weights against his physician's instructions (Count 2); and Gamber "negligently and/or wantonly interfered with the physician/patient relationship" between Ramsey and his orthopedic surgeon (Count 3). In a February 7, 2011 order, the district court granted summary judgment for Defendant Gamber on all of Ramsey's claims. Ramsey appealed.[5]

## II.  DISCUSSION[6]

## A.  Gamber's Liability on Counts 1 (Negligence) and 2 (Wantonness)

Under Alabama law, liability for negligence requires that (1) the defendant owed a duty to the plaintiff, (2) the defendant breached that duty, and (3) the breach proximately caused the plaintiff's injury. Albert v. Hsu, 602 So. 2d 895,

---

[5] In the district court, Ramsey did not oppose Gamber's summary judgment motion with respect to Ramsey's claims against Gamber for outrageous conduct (Count 4), civil conspiracy (Count 5), and violation of his civil rights pursuant to 42 U.S.C. § 1983 (Count 6). Ramsey does not appeal the district court's grant of summary judgment on these claims.

In addition, on appeal Ramsey does not brief the issue of Gamber's interference with the physician/patient relationship. Accordingly, we do not consider these issues. Carmichael, 572 F.3d at 1293 (explaining that issues not briefed on appeal are abandoned).

[6] A district court's grant of summary judgment is reviewed de novo. Holloman v. Mail-Well Corp., 443 F.3d 832, 836 (11th Cir. 2006). Summary judgment is appropriate when the evidence, viewed in the light most favorable to the nonmoving party, presents no genuine issue of material fact and compels judgment as a matter of law. Fed. R. Civ. P. 56(a); Holloman, 443 F.3d at 836.

6

897 (Ala. 1992). A claim of wantonness also requires proof of a breached duty. Ala. Power Co. v. Laney, 428 So. 2d 21, 22 (1983). Here, Plaintiff Ramsey has introduced no evidence showing that Defendant Gamber breached a duty he owed to Ramsey. The weight-room assistant, not Gamber, instructed Ramsey to perform the June 2, 2008 exercises that preceded his re-injury. Though Gamber had some responsibility for implementing Ramsey's rehabilitation plan, Ramsey has produced no evidence that Gamber included the injury-causing exercises in Ramsey's exercise regimen for June 2, 2008. Rather, Gamber testified that he had not authorized Ramsey to exercise with weights on the day he was re-injured.

We recognize that Ramsey claims that the missing rehabilitation plan entitles him to an adverse inference of Gamber's negligence and at least creates a material issue of fact for a jury because Gamber must have destroyed the plan in anticipation of litigation. However, Ramsey has produced no evidence that anyone destroyed the written plan, let alone that Gamber destroyed the plan in bad faith. See Bashir v. Amtrak, 119 F.3d 929, 931 (11th Cir. 1997) ("[A]n adverse inference is drawn from a party's failure to preserve evidence only when the absence of that evidence is predicated on bad faith. Mere negligence in losing or destroying the records is not enough for an adverse inference, as it does not

7

sustain an inference of consciousness of a weak case." (internal quotation marks and citation omitted)).  Indeed, evidence in the record suggests that Gamber could not have destroyed the relevant evidence, much less destroyed it in bad faith.  Yoxall, not Gamber, was responsible for writing and recording athletes' daily weight-room regimens.  In addition, Gamber's employment at Auburn ended in January 2009, months before this litigation commenced, and Gamber testified that he left behind any documents related to his work at Auburn.

Plaintiff Ramsey stresses his testimony that Creighton, the weight-room assistant, told Ramsey that the weight-lifting exercises were "on the list."  Ramsey argues that this statement shows Defendant Gamber negligently authorized the exercises.  But as the district court correctly noted, Ramsey's testimony about what the weight-room assistant told Ramsey is inadmissible hearsay and thus cannot be considered on Gamber's motion for summary judgment.[7]  See Reese v. Herbert, 527 F.3d 1253, 1271 n.29 (11th Cir. 2008).

In any event, Ramsey stated that Creighton also said, "I don't know who made [the list] up."  Accordingly, Creighton's testimony, even if credited, does not

---

[7] For reasons explained below, this hearsay statement is also not admissible against Gamber as a statement by "a party's agent or servant" because the evidence shows that weight-room assistants were not under Gamber's control and direction and thus were not Gamber's agents or servants.  Fed. R. Evid. 801(d)(2).

show that the list was the written rehabilitation plan Gamber and Yoxall developed or that Gamber had any connection whatsoever to the alleged erroneous list.

## B. Gamber's Vicarious Liability

Defendant Gamber is also entitled to summary judgment on Ramsey's theory of Gamber's vicarious liability for Yoxall and Creighton. Ramsey argues that Gamber "failed to ensure" that Yoxall and Creighton, who were "under [Gamber's] control," did not permit Ramsey to perform weight-lifting exercises proscribed by the rehabilitation plan.[8] Under the doctrine of respondeat superior, a principal is vicariously liable for his agent's negligent acts done in the scope of the agent's employment so long as the principal controls the means and method by which the agent performs his work. Martin v. Goodies Distribution, 695 So. 2d 1175, 1177 (Ala. 1997); see also Ware v. Timmons, 954 So. 2d 545, 549–50 (Ala. 2006). The party relying on the doctrine of respondeat superior has the burden of proving such a relationship between principal and agent. Ware, 954 So. 2d at 555.

Here, the evidence in the record shows that neither Yoxall nor weight-room assistants were Gamber's agents. Both Gamber and Dr. Goodlett testified that

[8] The district court construed this theory of vicarious liability as a claim of respondeat superior. In his brief on appeal, Ramsey confirms that this theory is based on that doctrine.

9

Gamber did not supervise Yoxall and that Yoxall independently managed the weight-room. Though Gamber testified that his recommendations for an athlete's rehabilitation regimen would control over Yoxall's, Gamber also testified that he "can't speak to how Coach Yoxall runs his weight room." Further, as noted above, Yoxall drafted athletes' daily weight-room regimens, and no evidence suggests that Gamber controlled, supervised, or directed Yoxall in this capacity. Nor does the record show that Gamber had the power to select or choose Yoxall or Yoxall's staff as his agents. See Ware, 854 So. 2d at 552 ("[F]or the purpose of . . . respondeat superior, it is indispensable that the right to select the person claimed to be a servant should exist." (internal quotation mark omitted)). In sum, Ramsey failed to demonstrate that Gamber exercised the requisite control over the means and methods of Yoxall and his weight-room assistants to sustain liability on a theory of respondeat superior.

## C. Paul Creighton's Deposition Testimony

In his brief, Ramsey cites the testimony of Paul Creighton, the weight-room assistant to Yoxall present on June 2, 2008, when Ramsey was re-injured. Creighton's deposition testimony was not part of the record at the time the district court considered Defendant Gamber's summary judgment motion. Rather,

Defendant Gamber took Creighton's deposition on December 30, 2010, after discovery had concluded and after Gamber's summary judgment motion was submitted but before the district court had ruled on it.

After the district court granted summary judgment for Gamber on February 7, 2011, Ramsey filed a Rule 59(e) motion to alter, amend or vacate the district court's summary judgment order on grounds that Creighton's testimony showed that the written rehabilitation plan erroneously permitted Ramsey to perform the exercises that led to his re-injury. The district court denied Ramsey's motion for three reasons: (1) Ramsey failed to ask the district court to consider Creighton's testimony after it became available and before the district court had ruled on Gamber's summary judgment motion; (2) Creighton's testimony contradicted Ramsey's own account of his re-injury; and (3) Creighton's testimony did not show that Gamber was liable for Creighton's re-injury.

The district court did not consider the Creighton testimony on summary judgment. As noted above, we deem abandoned Ramsey's appeal of the district court's denial of his Rule 59(e) motion to alter, amend or vacate the summary judgment order. Accordingly, we will not consider the Creighton testimony in our de novo review of the district court's summary judgment order. See Welch v.

11

Celotex Corp., 951 F.2d 1235, 1237 n.3 (11th Cir. 1992) ("Upon review of a grant by a district court of a motion for summary judgment, a federal appellate court may examine only the evidence which was before the district court when the latter decided the motion for summary judgment.").

## III.  CONCLUSION

Upon review of the entire record on appeal, and after consideration of the parties' briefs, we affirm the district court's grant of summary judgment to Defendant Gamber.

**AFFIRMED.**