# United States Court of Appeals
# for the Fifth Circuit

———————————

No. 25-40219

———————————

United States Court of Appeals
Fifth Circuit

**FILED**
March 5, 2026

Lyle W. Cayce
Clerk

Emilio Esparza,

*Plaintiff—Esparza*,

*versus*

Marco Rubio, *Secretary, U.S. Department of State*,

*Defendant—Appellee*.

———————————————————————————

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 7:23-CV-168

———————————————————————————

Before Clement, Douglas, and Ramirez, *Circuit Judges*.

Per Curiam:[*]

In this declaratory judgment action, Emilio Esparza appeals the district court's finding, after a bench trial, that he failed to prove by a preponderance of the evidence that he was born in the United States. We AFFIRM.

———————————————

[*] This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

No. 25-40219

I

In 2020, Esparza applied to the United States Department of State ("Department") for a passport. His application included a Texas birth certificate reflecting that he was born on May 4, 1999, at the Santa Maria Maternity Clinic in Hidalgo, Texas. The certificate was signed by the midwife who owned the clinic, Sylvia Salinas. But Esparza's mother had registered his Mexican birth certificate in Reynosa, Tamaulipas, which reflected that he was born there on February 4, 1999. In 2018, the Texas Department of State Health Services issued an addendum to Esparza's Texas birth certificate. It stated that the Department of Homeland Security Customs and Border Patrol had obtained his Mexican birth record, which stated that he was born on February 4, 1999, in Reynosa, Tamaulipas, and that "[t]he contradicting information may suggest fraud."

In 2020, Esparza filed a civil suit in a Mexican court to "rectify" his Mexican birth certificate to state that he was born on May 4, 1999, in Hidalgo, Texas. That court ordered it rectified. Esparza subsequently submitted additional documents to the Department to support his passport application, including his rectified Mexican birth certificate, and a baptismal certificate that also stated he was born on May 4, 1999, in Hidalgo, Texas, The Department denied Esparza's application.

Esparza sued under 8 U.S.C. § 1503(a), seeking a declaratory judgment that he is a United States citizen. During a bench trial in January 2025, Salinas testified that Esparza's mother first visited the clinic on September 8, 1998. Salinas completed a risk assessment form, on which she marked only the second and third trimester pregnancy boxes and noted a fetal heartbeat. She testified that she only had a stethoscope with which to detect fetal heartbeats and that a fetal heartbeat can only be detected with a stethoscope after about 18 to 20 weeks of gestation. When asked to count

2

backward forty weeks from the original Mexican certificate's date of February 4, 1999, Salinas testified that she was too tired to answer any more questions. She later testified that it was a routine practice for the clinic to outsource post-labor laboratory tests and to include the results in the patient's records. No laboratory records appeared for Esparza's mother.

Esparza's mother testified that she learned of her pregnancy about ten days after her last menses on August 10, 1998. She first visited the Santa Maria clinic on September 8, 1998, arranged for delivery there, and visited the clinic "once or twice" before giving birth. She also routinely saw a doctor in Mexico to monitor her high-risk pregnancy. Esparza's mother explained that she obtained Esparza's Mexican birth certificate before his birth to ensure medical care in Mexico for her son because she expected complications during delivery. She testified that she gave birth at the clinic on May 4, 1999.

Esparza also submitted the transcript from his father's deposition, which detailed his recollection of the circumstances surrounding Esparza's birth, and various records to prove that he was born in Hidalgo, Texas. These records included the Texas birth certificate, a baptismal certificate, Santa Maria Clinic records, and the original and rectified Mexican birth certificates.

The district court identified several conflicts between witness testimony and the clinic records. It found that the September 8, 1998, risk assessment form—indicating a second or third trimester pregnancy and noting a fetal heartbeat—was inconsistent with the last menses date of August 10, 1998. Given the thirty-day menstrual cycle listed in the clinic records, the court observed that she would have expected her next menses to start on September 9, 1998. It further observed that Esparza's mother's testimony regarding one or two clinic visits before giving birth conflicted with the clinic records, which reflected multiple clinic visits. And although she

described a painful and complicated delivery, the clinic records documented stable pulse and blood-pressure readings throughout labor.

The district court also found that Esparza obtained the rectified Mexican birth certificate through a default rectification proceeding more than twenty years after his birth, and that rectification was necessary because his mother obtained the original certificate before he was born. The court concluded that the rectified certificate did not outweigh the probative value of the original. Finding that Esparza had failed to prove by a preponderance of the evidence that he was born in the United States, the district court denied declaratory relief. Esparza now appeals.

## II

"The standard of review for a bench trial is well established: findings of fact are reviewed for clear error and legal issues are reviewed de novo." *Kona Tech. Corp. v. S. Pac. Transp. Co.*, 225 F.3d 595, 601 (5th Cir. 2000); *see also* Fed. R. Civ. P. 52(a)(6) (providing that after a bench trial, "[f]indings of fact, whether based on oral or other evidence, must not be set aside unless clearly erroneous"). Clear error review requires "great deference" to the district court's factual findings. *Guzman v. Hacienda Recs. & Recording Studio, Inc.*, 808 F.3d 1031, 1036 (5th Cir. 2015). "If the district court's account of the evidence is plausible in light of the record viewed in its entirety, the court of appeals may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently." *Anderson v. City of Bessemer City, N.C.*, 470 U.S. 564, 573–74 (1985). Moreover, "[w]hen findings are based on determinations regarding the credibility of witnesses," they are owed "even greater deference." *Id.* at 575; *see also* Fed. R. Civ. P. 52(a)(6) ("[T]he reviewing court must give due regard to the trial court's opportunity to judge the witnesses' credibility.").

No. 25-40219

## III

Esparza argues that the district court erred in concluding that he failed to establish that he was born in the United States because it (1) failed to give preclusive effect to his updated birth certificate; (2) drew an adverse inference from the evidence, amounting to an improper burden shift; (3) discredited testimony; (4) took improper judicial notice of a fact; (5) applied the wrong standard of proof; and (6) committed cumulative error. We disagree.

## A

Esparza first argues that the district court abused its discretion by declining to give conclusive effect to the rectified Mexican birth certificate, as principles of international comity required.

Under the principles of comity, a federal court will treat a foreign judgment as conclusive when the parties had notice and an opportunity to be heard. *Int'l Transactions, Ltd. v. Embotelladora Agral Regiomontana, SA de CV*, 347 F.3d 589, 593 (5th Cir. 2003); *see Garcia v. Kerry*, 557 F. App'x 304, 308–09 (5th Cir. 2014) (unpublished) (applying the principles of comity in an immigration context). Comity is discretionary and may be withheld when the foreign judgment is undermined by "fraud or prejudice," however. *Hilton v. Guyot*, 159 U.S. 113, 206 (1895); *Int'l Transactions, Ltd.*, 347 F.3d at 594.

The district court considered the rectified Mexican birth certificate but declined to treat it as conclusive. The court noted that the rectification resulted from a default proceeding that relied on the Texas birth certificate, and the record does not show that Esparza submitted the addendum to the Texas certificate in the rectification proceeding. The court found that the inconsistencies it identified, including those in the clinic records underlying the Texas certificate, undermined the reliability of the rectified certificate. Because the rectification proceeding relied on the Texas certificate, the court

concluded that any defects in that certificate carried through to the rectified certificate.

Because comity is not mandatory and the district court identified reliability concerns suggesting fraud, it did not abuse its discretion by declining to give the rectified birth certificate preclusive effect. *Hilton*, 159 U.S. at 206.

B

Esparza next argues that the district court erred by applying an adverse inference based on his inability to produce certain medical records, which shifted the burden of proof by requiring him to disprove the Department's determination that he was not born in the United States.

Under 8 U.S.C. § 1503, a person denied a right or privilege as a United States national may bring a civil action seeking a declaration of citizenship. 8 U.S.C. § 1503(a). In a § 1503(a) action, the plaintiff bears the burden of proving his citizenship by a preponderance of the evidence. *De Vargas v. Brownell*, 251 F.2d 869, 870–71 (5th Cir. 1958). When evidence has been intentionally destroyed or withheld in bad faith, the adverse inference doctrine applies. *See Vick v. Tex. Emp. Comm'n*, 514 F.2d 734, 737 (5th Cir. 1975) (explaining that an adverse inference related to the destruction of records may be drawn only when supported by intentional, bad faith destruction of relevant records).

Here, the district court made no finding that records had been destroyed or withheld in bad faith. It observed that post-delivery laboratory test results, which the clinic routinely performed and included in its records, were missing. And although Esparza's mother testified that she received regular prenatal care in Mexico, no corresponding medical records were presented. The court explained that the absence of those records made it more difficult to reconcile inconsistencies in the evidence. But it did not treat

6

the missing records as evidence of destruction or bad faith. *See Vick*, 514 F.2d at 737.

Because the court relied on the evidence presented, it did not shift the burden of proof; it applied the correct preponderance standard. It did not err in finding that Esparza failed to meet his burden under § 1503(a). *De Vargas*, 251 F.2d at 871.

## C

Esparza argues that the district court erred by discrediting the testimony of his mother and Salinas based on what he characterizes as "minor inconsistencies."

We review credibility determinations for clear error. *See* Fed. R. Civ. P. 52(a). Under the clear error standard, credibility findings receive substantial deference and are not disturbed by minor or immaterial inconsistencies. *See Anderson*, 470 U.S. at 575.

Esparza cites his mother's and Salinas's testimony as corroborating the clinic records regarding his birth, but the district court identified several inconsistencies. Both the clinic records and Esparza's mother's testimony list the date of her last menses as August 10, 1998, which, given her reported thirty-day menstrual cycle, placed her next expected menses on September 9, 1998. Yet she first visited the clinic on September 8, 1998, when Salinas recorded her being in the second or third trimester. A last menses date of August 10, 1998, would have placed her in the first trimester, rather than the second or third. As the court noted, counting back forty weeks from the date on the original Mexican birth certificate, February 4, 1999, would place Esparza's mother's first clinic visit on September 8, 1998, within the second trimester, when a fetal heartbeat could have been detected by a stethoscope. The form also noted a fetal heartbeat. But Salinas testified that she had only a stethoscope, and she acknowledged that a fetal heartbeat cannot be heard

with a stethoscope until about 18 to 20 weeks of gestation. If the last menses occurred on August 10, 1998, Salinas could not have detected a fetal heartbeat on September 8, 1998. The court further noted that Esparza's mother testified that she learned she was pregnant about ten days after her last menses—an assertion the court found "very unlikely . . . so soon after her menses."

The district court further identified discrepancies in her account of prenatal care and delivery. Esparza's mother testified that she visited the clinic only once or twice during her pregnancy, but the clinic records reflected visits on multiple occasions. And although she described a painful and complicated delivery, the records reflect a stable pulse and blood-pressure throughout labor—readings the court found unlikely with such a delivery. The court also noted that she testified she sought a Mexican birth certificate before Esparza's birth to obtain healthcare benefits for Esparza. And it found that the baptism certificate did not corroborate her account because the record did not show what information the church relied on when issuing it.

Taken together, these discrepancies went to the heart of Esparza's asserted birth timeline, undermining the reliability of the testimony offered. The district court's credibility determinations were supported by the record and not clearly erroneous. *See Anderson*, 470 U.S. at 575.

D

In his fourth issue, Esparza challenges the district court's observation that, "[c]onsidering medical technology in 1999, it seems very unlikely that [Esparza's] mother could have known she was pregnant so soon after her menses." He argues that the court abused its discretion by taking judicial notice of a medical fact concerning pregnancy-detection capabilities in 1998 without giving him an opportunity to be heard.

No. 25-40219

Under Rule 201, a court may take judicial notice of an adjudicative fact that is not subject to reasonable dispute. FED. R. EVID. 201(a)–(d). Here, it is not clear that the district court took judicial notice of medical facts outside of the record because Salinas testified about when pregnancy could be detected through pregnancy home tests and blood tests. But even if the district court took judicial notice of a medical fact, Rule 201 gives a party the opportunity to be heard on whether judicial notice is appropriate on a *timely request*. FED. R. EVID. 201(e). Esparza never requested an opportunity to be heard under Rule 201, although he could have done so after the district court entered its findings and final judgment. *See id.*

Because the record amply supports the district court's finding that Esparza was not born in the United States, even without the reference to pregnancy-detection capabilities, he cannot show reversible error. *See Goodman v. Highlands Ins. Co.*, 607 F.2d 665, 668 (5th Cir. 1979) (holding that even assuming evidentiary error, reversal is unwarranted where the judgment is supported by other competent evidence).

E

In his fifth issue, Esparza argues that the district court applied a burden of proof higher than the preponderance standard required in a citizenship case.

The district court expressly identified and applied the preponderance of the evidence standard, not a heightened one, when evaluating the evidence. Because nothing in the record shows that the district court required more than a preponderance of the evidence, this argument fails.

F

Finally, Esparza invokes the cumulative error doctrine, citing *O'Rear v. Fruehauf Corp.*, 554 F.2d 1304, 1310 (5th Cir. 1977) (holding that the

cumulative effect of multiple prejudicial statements denied the appellant a fair trial).

The cumulative error doctrine applies when "an aggregation of non-reversible errors" can combine to require reversal. *United States v. Delgado*, 672 F.3d 320, 343–44 (5th Cir. 2012) (en banc) (quoting *United States v. Munoz*, 150 F.3d 401, 418 (5th Cir. 1998)). However, the cumulative error doctrine applies "only when errors so fatally infect the trial that they violated the trial's fundamental fairness." *Id.* at 344 (citation modified).

Because Esparza has identified no errors, *see id.*, his cumulative error argument fails.

\* \* \*

AFFIRMED.